GUIDEONE ELITE INSURANCE COMPANY f/k/a Preferred Abstainers Insurance Company, Petitioner,

v.

FIELDER ROAD BAPTIST CHURCH, Respondent.

No. 04–0692.

Supreme Court of Texas.

Argued Oct. 20, 2005.

Decided June 30, 2006.

Rehearing Denied Aug. 25, 2006.

---

Sandra Cockran Liser, Grant Liser, Jennifer L. Willingham, for petitioner.

James E. Lobert, Jerry R. Hoodenpyle, David Graham Petter, Robert M. Roach, Jr., Robert J. Cunningham, Robert B Dubose, for respondent.

David M. Pruessner, Wade Caven Crosnoe, for amicus curiae.

Justice MEDINA delivered the opinion of the Court, joined by Chief Justice JEFFERSON, Justice O'NEILL, Justice GREEN, and Justice JOHNSON.

In this declaratory judgment action, we are asked to create an exception

to the complaint-allegation or eight-corners rule. The eight-corners rule provides that when an insured is sued by a third party, the liability insurer is to determine its duty to defend solely from terms of the policy and the pleadings of the third-party claimant. Resort to evidence outside the four corners of these two documents is generally prohibited.

The trial court, relying on evidence extrinsic to the policy and pleadings, declared that the insurer had no duty to defend the underlying claim against its insured. The court of appeals, however, reversed, concluding that because the circumstances of the case presented no reason to create an exception to the eight-corners rule, the trial court had erred in using extrinsic evidence to defeat the insurer's duty to defend. 139 S.W.3d 384. We agree and, accordingly, affirm the court of appeals' judgment.

### I

GuideOne Elite Insurance Company issued a commercial general liability insurance policy to Fielder Road Baptist Church, effective March 31, 1993. The policy included the following liability coverage for sexual misconduct:

> We agree to cover your legal liability for damages because of bodily injury, excluding any sickness or disease, to any person arising out of sexual misconduct which occurs during the policy period. We shall have the right and duty to investigate any claim . . . and to defend any suit brought against you seeking damages, even if the allegations of the suit are groundless, false or fraudulent, and we may make any settlement we deem expedient.

The policy expired on March 31, 1994.

On June 6, 2001, Jane Doe filed a sexual misconduct lawsuit against the Church and Charles Patrick Evans. In her pleadings, Jane Doe alleged that "[a]t all times material herein from 1992 to 1994, Evans was employed as an associate youth minister and was under Fielder Road's direct supervision and control when he sexually exploited and abused Plaintiff." The Church demanded that GuideOne defend it in the lawsuit and indemnify it for any judgment or settlement. GuideOne agreed to defend, but questioned coverage under the policy and reserved its rights to determine that issue at a later time.

A few months later, GuideOne filed this declaratory judgment action seeking the policy's construction and a declaration that GuideOne had no duty to defend or indemnify the Church in the underlying sexual misconduct lawsuit. In this action, GuideOne sought discovery of Evans' church employment history. The Church objected, asserting that GuideOne's duty to defend should be determined from the pleadings and the insurance policy, without resort to extrinsic evidence. The trial court, however, declined to block the discovery request, and the Church thereafter advised GuideOne that Evans ceased working for it on December 15, 1992, before the GuideOne policy took effect.

After both parties filed motions for summary judgment, the trial court granted GuideOne's motion, denied the Church's, and rendered judgment declaring that GuideOne had no duty to defend the Church in the underlying sexual misconduct case. The court of appeals, however, reversed the summary judgment, concluding that the trial court had erred in considering extrinsic evidence to defeat GuideOne's duty to defend its insured. 139 S.W.3d 384. The court of appeals further concluded that Jane Doe's allegations were sufficient to invoke that duty, remanding the case to the trial court for a hearing only on costs and attorney's fees. *Id.* at 390–91. GuideOne petitioned this Court for review.

## II

GuideOne argues that it had no duty to defend the Church against the underlying claim of sexual misconduct because Evans left his job as a youth minister before the policy's effective date. Because Jane Doe's allegations against the Church involved Evans' conduct while a youth minister, GuideOne suggests, that extrinsic evidence of when that relationship ended establishes no coverage existed for Evans' acts during the policy period. Recognizing the eight-corners rule as an impediment to its argument, however, GuideOne contends a number of reasons support its proposition that extrinsic evidence regarding Evans' employment status be considered as an exception to the rule.

First, GuideOne argues that an exception should apply because the extrinsic evidence here was primarily relevant to the issue of coverage, rather than the merits of the plaintiff's underlying claim. Alternatively, GuideOne argues that extrinsic evidence is needed to supplement the plaintiff's allegations because those allegations alone are insufficient to determine coverage or the duty to defend. Finally, GuideOne submits that should the Court conclude that the employment evidence is relevant both to coverage and liability, an exception to the eight-corners rule should nevertheless be recognized for this type of "mixed" or "overlapping" extrinsic evidence.

Under the eight-corners or complaint-allegation rule, an insurer's duty to defend is determined by the third-party plaintiff's pleadings, considered in light of the policy provisions, without regard to the truth or falsity of those allegations. *Argonaut Sw. Ins. Co. v. Maupin*, 500 S.W.2d 633, 635 (Tex.1973); *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 24 (Tex.1965). The rule takes its name from the fact that only two documents are ordinarily relevant to the determination of the duty to defend: the policy and the pleadings of the third-party claimant. *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex.2002). Facts outside the pleadings, even those easily ascertained, are ordinarily not material to the determination and allegations against the insured are liberally construed in favor of coverage. *Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex.1997).

Although this Court has never expressly recognized an exception to the eight-corners rule, other courts have.[1] Generally, these courts have drawn a very narrow exception, permitting the use of extrinsic evidence only when relevant to an independent and discrete coverage issue, not touching on the merits of the underlying third-party claim.[2] Recently, the Fifth

---

1. *See generally,* 1 ROWLAND H. LONG, THE LAW OF LIABILITY INSURANCE § 5.02[2][b][ii] at 5–27 (2006) ("When the extrinsic facts relied on by the insurer are relevant to the issue of coverage, but do not affect the third party's right of recovery, courts have held that the insurer may refuse to defend third-party actions even though the allegations in the complaint indicate coverage."); 1 ALLAN D. WINDT, INSURANCE CLAIMS AND DISPUTES § 4:4 *Insurer's refusal to defend based on existence of extrinsic facts* (4th ed.2001) (citing cases which recognize that insurer may use extrinsic evidence to explain or refute factual allegations that are immaterial or extraneous to the merits of the third-party's claim but relate solely to the question of coverage).

2. *See, e.g., W. Heritage Ins. Co. v. River Entm't,* 998 F.2d 311, 313 (5th Cir.1993) ("However, when the petition does not contain sufficient facts to enable the court to determine if coverage exists, it is proper to look to extrinsic evidence in order to adequately address the issue."); *Westport Ins. Corp. v. Atchley, Russell, Waldrop & Hlavinka, L.L.P.,* 267 F.Supp.2d 601, 621–22 (E.D.Tex.2003) (extrinsic evidence admissible in deciding the duty to defend where fundamental policy cov-

Circuit observed that if this Court were to recognize an exception to the eight-corners rule, it would likely do so under similar circumstances, such as: "when it is initially impossible to discern whether coverage is potentially implicated *and* when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case." *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 531 (5th Cir.2004) (emphasis in original).

GuideOne relies on extrinsic evidence that is relevant both to coverage and the merits and thus does not fit the above exception to the rule. Hence, GuideOne argues that we should broaden the exception to include this type of "mixed" or "overlapping" extrinsic evidence. But very little support exists for this position, and the Fifth Circuit Court of Appeals has previously rejected a similar use of overlapping facts for this purpose. In *Gulf Chemical & Metallurgical Corp. v. Associated Metals & Minerals Corp.*, one of the plaintiffs in the underlying toxic-tort action alleged that one of the defendants, Gulf,

was strictly liable because it had sold or shipped molyoxide. 1 F.3d 365, 367 (5th Cir.1993). The petition did not specifically state when Gulf had shipped molyoxide, but the petition did allege that the plaintiffs had suffered injures from exposure to the toxin between 1946 and 1990. *Id.* at 368. Extrinsic evidence would have established that Gulf had not shipped any molyoxide until January 20, 1986, which was three days after the expiration of the insurance policy in question. *Id.* at 368, 370. Although the fact at issue concerned both the merits and coverage, the Fifth Circuit, applying Texas law, rejected the use of extrinsic evidence under these circumstances. *Id.* at 371. We likewise reject the use of overlapping evidence as an exception to the eight-corners rule because it poses a significant risk of undermining the insured's ability to defend itself in the underlying litigation. *See* Ellen S. Pryor, *Mapping the Changing Boundaries of the Duty to Defend in Texas*, 31 TEX. TECH LAW REV. 869, 891–95 (2000) (discussing risks associated with using overlapping evidence as an exception to the eight-corners rule).[3]

erage questions can be resolved by readily determined facts that do not engage the truth or falsity of the allegations in the underlying petition, or overlap with the merits of the underlying suit); *State Farm Fire & Cas. Co. v. Wade*, 827 S.W.2d 448, 452–53 (Tex.App.-Corpus Christi 1992, writ denied) (concluding that extrinsic evidence could be admitted in deciding the duty to defend when the facts alleged are insufficient to determine coverage and "when doing so does not question the truth or falsity of any facts alleged in the underlying petition"); *Gonzales v. Am. States Ins. Co.*, 628 S.W.2d 184, 187 (Tex.App.-Corpus Christi 1982, no writ) (holding that facts extrinsic to the petition relating only to coverage, not liability, may be considered to determine a duty to defend, where such evidence does not contradict any allegation in the petition); *Cook v. Ohio Cas. Ins. Co.*, 418 S.W.2d 712, 715–16 (Tex.Civ.App.-Texarkana 1967, no writ) ("[T]he Supreme Court draws a dis-

tinction between cases in which the merit of the claim is the issue and those where the coverage of the insurance policy is in question. In the first instance the allegation of the petition controls, and in the second the known or ascertainable facts are to be allowed to prevail."); *Int'l Serv. Ins. Co. v. Boll*, 392 S.W.2d 158, 161 (Tex.Civ.App.-Houston 1965, writ ref'd n.r.e.) (considering extrinsic evidence of identity of driver of insured vehicle by stipulation to conclude no duty to defend or indemnify arose).

3.  One amicus suggests that the Church here might have a coverage-related incentive to prove that Evans was at least apparently employed by the Church during GuideOne's policy term in order to secure insurance coverage. This proof, once obtained by the third-party claimant through discovery, would undermine the insured's defense to those claims. Similarly, the insurer might have a coverage-

Those courts that have recognized an exception to the eight-corners rule have done so under limited circumstances involving pure coverage questions. For example, in *International Service Insurance Co. v. Boll*, 392 S.W.2d 158, 160 (Tex.Civ. App.—Houston 1965, writ ref'd n.r.e.), the insurer refused to defend its insured in an auto-collision case because of a policy endorsement that excluded coverage for "any claim arising from accidents which occur while any automobile is being operated by Roy Hamilton Boll." The plaintiff's petition alleged that the insured's son was driving the insured's car when the accident occurred, but did not otherwise identify the driver. After resolving the third-party claim, the insured sued his insurer to recover his defense costs. During this subsequent litigation, the parties stipulated that the insured's only son, Roy Hamilton Boll, was driving the insured vehicle. The court of appeals concluded that the stipulation established the accident had not been covered and that the insurer had no duty to defend.

The extrinsic evidence in *Boll*, however, went strictly to the coverage issue. It did not contradict any allegation in the third-party claimant's pleadings material to the merits of that underlying claim. In contrast, the extrinsic evidence here concerning Evans' employment directly contradicts the plaintiff's allegations that the Church employed Evans during the relevant coverage period, an allegation material, at least in part, to the merits of the third-party claim. Under the eight-corners rule, the allegation's truth was not a matter for debate in a declaratory judgment action between insurer and insured.

Moreover, were we to recognize the exception urged here, we would by necessity conflate the insurer's defense and indemni-

ty duties without regard for the policy's express terms. Although these duties are created by contract, they are rarely coextensive. *See Utica Nat'l Ins. Co. of Texas v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex.2004) (observing that duty to defend and duty to indemnify are distinct and separate); *Whatley v. City of Dallas*, 758 S.W.2d 301, 304 (Tex.App.-Dallas 1988, writ denied) (duty to defend is defined by the terms of the contract). The policy here obligated GuideOne to indemnify the Church in the event of a meritorious claim for sexual misconduct, but with respect to the duty to defend, the contract provided that GuideOne should "defend any suit brought against [the insured] seeking damages, even if the allegations of the suit are groundless, false or fraudulent . . . ."

■ The policy thus defined the duty to defend more broadly than the duty to indemnify. This is often the case in this type of liability policy and is, in fact, the circumstances assumed to exist under the eight-corners rule. Because the respective duties differ in scope, they are invoked under different circumstances. *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 821–22 (Tex.1997). A plaintiff's factual allegations that potentially support a covered claim is all that is needed to invoke the insurer's duty to defend, *Heyden Newport Chemical Corp.*, 387 S.W.2d at 26; whereas, the facts actually established in the underlying suit control the duty to indemnify. *Trinity Universal Ins. Co.*, 945 S.W.2d at 821.

Jane Doe alleged that Evans sexually assaulted her during the policy period and was a youth minister at the Church at the time. As the court of appeals observed, the allegations were sufficient to trigger

---

related incentive to develop proof that the third-party claim is based on criminal or intentional conduct to establish a policy exclusion.

GuideOne's duty to defend. 139 S.W.3d at 389.

GuideOne contends that it should not have to defend because it *knows* that Evans was not in fact an employee of the Church during this period, but the duty to defend does not turn on the truth or falsity of the plaintiff's allegations. One amicus argues, however, that it should because ignoring the truth invites fraudulent and even collusive pleadings. The amicus further suggests that we should adopt a true-facts exception to the eight-corners rule to prevent the rule's recurring use as a tool for fraud. But the record before us does not suggest collusion or the existence of a pervasive problem in Texas with fraudulent allegations designed solely to create a duty to defend.

Under the present policy, GuideOne agreed to defend the Church against allegations of sexual misconduct potentially within coverage, even if the plaintiff's allegations were false or fraudulent. Therefore if GuideOne knows these allegations to be untrue, its duty is to establish such facts in defense of its insured, rather than as an adversary in a declaratory judgment action. *Heyden Newport Chemical Corp.*, 387 S.W.2d at 25 (observing that the duty to defend coverage protects policyholders against the expense of suits seeking damages). Application of the eight-corners rule here thus conforms with the parties' contract, and accordingly we agree with the court of appeals that the circumstances of this case present no basis for an exception to that rule.

### III

█ GuideOne also argues that Doe's pleadings failed to invoke its duty to defend because her allegations did not suffi-ciently describe her bodily injury. The policy defined "bodily injury" to mean "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."[4] GuideOne maintains it had no duty to defend because Doe's pleadings sought damages for emotional and psychological injuries rather than "bodily injury."

The court of appeals disagreed, noting that Doe's allegations of sexual assault, abuse, molestation and violation were sufficient. 139 S.W.3d at 390. Because the policy attributed no technical or special meaning to the term "bodily injury," the court applied its ordinary and generally accepted meaning, concluding that bodily injury is commonly understood to be a consequence of sexual assault and abuse. *Id.* We agree.

Finally, GuideOne complains that the court of appeals erred in remanding the case to the trial court for determination of costs and attorneys' fees because Doe did not herself file a declaratory judgment action and did not pray for attorneys' fees in the proceedings below. Contrary to GuideOne's argument, however, the Church asked in its second amended motion for summary judgment that the court not only grant its motion, but also conduct a hearing and award it attorneys' fees. The Declaratory Judgments Act provides that in any proceeding under the Act "the court may award costs and reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM. CODE § 37.009. The reasonable and necessary requirements are questions of fact to be determined by the factfinder; the equitable and just requirements are questions of law for the trial court to decide. *Bocquet*

---

4. Although not relevant here, the sexual misconduct clause of the policy excluded sickness or disease from the definition, making the definition of "bodily injury" in this context somewhat circular.

*v. Herring,* 972 S.W.2d 19, 21 (Tex.1998). The court of appeals therefore did not err in remanding the issue of attorneys' fees and costs to the trial court.

\*    \*    \*    \*    \*    \*

Finding no error in the court of appeals' judgment, we affirm.

Justice HECHT filed a concurring opinion, joined by Justice WAINWRIGHT, Justice BRISTER, and Justice WILLETT.

Justice HECHT, joined by Justice WAINWRIGHT, Justice BRISTER and Justice WILLETT, concurring in the judgment.

Fielder Road Baptist Church and its insurer, GuideOne Elite Insurance Co., have reached a stipulation about the nature and duration of the Church's relationship with a former youth worker, Charles Patrick Evans, alleged to have sexually abused Jane Doe. GuideOne argues that the stipulation should be considered in determining whether it has a duty to defend the Church against Doe's lawsuit, and the Court rejects that argument. The Church argues that even if the stipulation were considered, Doe's pleadings would still invoke GuideOne's duty to defend. Because the Church is correct, the Court's discussions of the so-called "eight-corners rule", and whether there should ever be exceptions to it, is unnecessary. I would not address these difficult issues in a case in which they cannot affect the result. Accordingly, I join only in the Court's judgment.

Doe sued the Church and Evans, alleging in her petition the following:

At all times material herein, Charles Patrick Evans was an associate youth minister. At all times material herein, Charles Evans remained under the retention, direct supervision, agency and control of Defendant Church.

From approximately early 1992 to 1994, Defendant Evans was an associate youth minister at Fielder Road Baptist Church in Arlington, Texas. During this period Fielder Road knew or should have known that Evans engaged in forbidden sexual conduct which was both actually and potentially damaging to other persons including Plaintiff.... Fielder Road had knowledge that Evans had made inappropriate sexual advances to other young girls in the church. Despite these reports, Fielder Road continued to place Evans in a position as a youth minister with access and authority over young girls.

From approximately 1992 to 1994, Evans sexually molested Jane Doe at church functions and church sponsored trips, as well as at her own home.

\*    \*    \*    \*    \*    \*

Despite allegations of previous incidents, Fielder Road failed to warn parents of the children in the church youth ministry of the sexual tendencies of Defendant Evans.

\*    \*    \*    \*    \*    \*

At all times material herein from 1992 to 1994, Evans was employed as an associate youth minister and was under Fielder Road's direct supervision and control when he sexually exploited and abused Plaintiff. Defendant Evans came to know Plaintiff and gained access to her because of his status as a youth minister. Defendant Evans engaged in this wrongful conduct while in the course and scope of his employment with Defendant Fielder Road. Therefore, Defendant Fielder Road is liable for the wrongful conduct of Defendant Evans. Plaintiff therefore pleads *Respondeat Superior,* agency, apparent agency and

agency by estoppel, vicarious and derivative liability.

Defendant Fielder Road negligently selected, hired and/or continued the employment of Defendant Evans in a position of trust, confidence and authority as a youth minister in direct contact with minors when it knew or should have known of his dangerous sexual propensities.

Fielder Road failed to warn Plaintiff or her family of Evans' dangerous sexual propensities.

Fielder Road failed to provide reasonable supervision of Evans.

Fielder Road, as a religious organization, is granted special privileges and immunities by society and is in a special fiduciary relationship with Plaintiff. Defendant owed Plaintiff the highest duty of trust and confidence and is required to act in Plaintiff's best interest. Defendant knowingly violated the relationship. Defendant knowingly breached Plaintiff's trust when Fielder Road failed to act with the highest degree of trust and confidence to protect Plaintiff from its sexually predatory minister. This knowing breach of fiduciary duty proximately caused injury to Plaintiff.

\*     \*     \*     \*     \*     \*

Fielder Road also committed fraud by misrepresentation that proximately caused Plaintiff's damages. Fielder Road committed fraud when it represented that Evans was sexually safe, when it knew or should have known of his pedophilic tendencies.

\*     \*     \*     \*     \*     \*

Plaintiff alleges that the actions of these Defendants have inflicted emotional distress upon Plaintiff.

Plaintiff alleges that the negligence of Fielder Road resulted in bodily injury to Plaintiff.

The Church has stipulated that the petition's allegation that "Evans was an associate youth minister" at the Church from "approximately early 1992 to 1994" is false. Specifically, the Church has stipulated:

Charles Patrick Evans became a part-time intern in the youth department of Defendant FRBC on November 14, 1991. On January 1, 1992, Charles Patrick Evans was hired as a part-time associate in the youth department of Defendant FRBC. Charles Patrick Evans left employment with Defendant FRBC on or about December 15, 1992. Charles Patrick Evans never served, nor was he ever authorized to so act, as an officer or director of Defendant FRBC. Charles Patrick Evans did not serve, nor was he ever authorized to act, as an employee, or volunteer of Defendant FRBC at any time after December 1992. Charles Patrick Evans was officially removed as a member of Defendant FRBC in February of 1993.

From March 31, 1993, to March 31, 1994, GuideOne insured the Church against "legal liability for damages because of bodily injury ... to any person arising out of sexual misconduct which occurs during the policy period" and agreed to "defend any suit brought against [the Church] seeking damages, even if the allegations of the suit are groundless, false or fraudulent". GuideOne argues that because the Church did not employ Evans or authorize him to act on its behalf during that period, Doe's accusations are not covered by the policy. That is simply incorrect.

Doe alleges that Evans' sexually molested her "[f]rom approximately 1992 to 1994"—within the policy period. Doe further alleges that she suffered bodily injury because of Evans' sexual misconduct, for which the Church is liable. If the Church is correct that it did not employ Evans

within the policy period, then Doe's claim against the Church for vicarious liability would fail. But that is clearly not Doe's only claim. She claims that the Church knew or should have known of Evans' sexual misconduct from "approximately early 1992 to 1994" and should have warned her and her family. She also claims that Evans was the Church's apparent agent, that the Church breached its fiduciary duty to her, and that the Church made misrepresentations to her. Whether those and other claims have merit, legally or factually, they assert liability against the Church that may not depend on the period of Evans' association with the Church and thus invoke the duty to defend. GuideOne concedes that if it has a duty to defend any of Doe's claims, it has a duty to defend them all.[1]

The "eight-corners" rule applies whether the Church's stipulation is considered or not. Thus, we have no need to consider what exceptions the rule might have, and given the importance of this difficult issue, I would express no opinion on it.

Accordingly, I concur only in the judgment.

1. *Maryland Cas. Co. v. Moritz,* 138 S.W.2d 1095, 1097 (Tex.Civ.App.—Austin 1940, writ ref'd).