Motions for Rehearing Overruled; Affirmed in Part and Reversed and
Remanded in Part; Memorandum Opinion of June 29, 2006 Withdrawn; and Substitute
Memorandum Opinion on Rehearing filed October 26, 2006








 

Motions
for Rehearing Overruled; Affirmed in Part and Reversed and Remanded in Part;
Memorandum Opinion of June 29, 2006 Withdrawn; and Substitute Memorandum
Opinion on Rehearing filed October 26, 2006.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00486-CV

____________

 

D.R. HORTON - TEXAS, LTD., Appellant

 

V.

 

MARKEL INTERNATIONAL INSURANCE
COMPANY, LTD. 

AND SPHERE DRAKE INSURANCE, LTD., Appellees

 



 

On Appeal from the 281st
District Court

Harris County, Texas

Trial Court Cause No. 03-68937

 



 

S U B S T I T U T E   M E M O R A N
D U M   O P I N I O N   O N  
R E H E A R I N G

We withdraw our memorandum opinion of June 29, 2006 and
issue this substitute memorandum opinion on rehearing.  We overrule the various
motions for rehearing filed by appellant D.R. Horton and appellee Sphere Drake
Insurance, Ltd.








In this appeal from take-nothing summary judgments granted
in favor of appellees,  Markel International Insurance Company, Limited[1]
(AMarkel@) and Sphere Drake
Insurance, Limited[2]
(ASphere Drake@), we examine
whether appellees had a duty to defend and indemnify appellant, D. R. Horton -
Texas, Limited[3]
(AHorton@), as an
additional insured in an underlying lawsuit arising out of the construction and
warranty repair of a home.  Because Markel satisfied its burden of proof under
the Aeight corners rule@ on all of Horton=s claims, except
Horton=s claims of
statutory and common law misrepresentation, we affirm in part, reverse in part
the trial court=s judgment as to Markel, and remand that
portion of the case.  Because Sphere Drake failed to meet its burden of proof
under the Aeight corners rule,@ we reverse the
trial court=s summary judgment in favor of Sphere Drake and remand
that portion of the case as well.

I.  Factual and Procedural
Background








On July 31, 2002, James and Cicely Holmes filed suit
against homebuilder Horton,[4]
alleging the home they had purchased from a third party in July 2001 contained
latent defects that led to the propagation of toxic mold, rendering the home
uninhabitable.[5] 
The Holmeses claimed that in October 2001, shortly after moving into the
residence, they discovered toxic mold in the house.  They further claimed that
during the mold remediation process, latent defects were discovered in the
construction and design of the home, particularly in connection with the chimney,
roof, vent pipes, windows, window frames, and flashing around the roof and
chimney.  The Holmeses alleged that these defects allowed water to enter the
home, and that Horton had made faulty, incomplete and negligent attempts to
repair these latent defects. 

Horton demanded that Markel and Sphere Drake defend it in
the Holmes suit.  Sphere Drake had insured independent contractor
Rosendo Ramirez from September 16, 1992 through September 16, 1999, and Horton
had been named on the policy as an additional insured for certain claims.[6] 
Markel insured Ramirez from September 16, 1999 through September 16, 2002,[7]
and Horton was named as an additional insured for claims arising out of Ramirez=s work.  Although
the Holmes petition does not mention Ramirez or any other subcontractor,
Horton asserts that Ramirez performed the masonry work for the original
construction of the Holmes residence as well as repairs performed in 1999. 
Horton therefore claims that Ramirez=s insurers are
required to defend Horton in the Holmes suit.

Markel did not respond to Horton=s demand for
defense, and Sphere Drake denied coverage on the basis that the damage
manifested after its coverage terminated.[8] 
After both insurers failed to assume Horton=s defense, Horton
hired its own defense counsel and settled the case for $50,000.00.  

In December 2003, Horton filed suit against Markel and
Sphere Drake for reimbursement of the settlement funds and defense costs. 
Horton stated claims against both insurers for breach of contract, violations
of the Texas Insurance Code, and misrepresentation. 








On March 11, 2005, Markel filed a traditional motion for
summary judgment, asking the court to find that it had no duty to defend or
indemnify Horton.  Sphere Drake filed a similar motion on April 1, 2005. 
Horton responded to Markel=s motion on April 11, 2005, and pursuant
to a Rule 11 agreement, responded to Sphere Drake=s motion on April
13, 2005. Although the title of Horton=s response to Markel=s motion gave no
indication that the response was combined with a motion for continuance of the
April 18, 2005 hearing on Markel=s summary judgment
motion, the request was included under the heading AObjections@ on the fourth
page of the thirty-eight page response.  The hearing was not continued, and the
trial court granted summary judgments in favor of Markel and Sphere Drake.

II.  Issues Presented

On appeal, Horton seeks reversal of both summary
judgments.  Although Horton asserts numerous subpoints, the central issues are
whether (a) Markel had a duty to defend and indemnify Horton in the Holmes
suit, (b) Sphere Drake had a duty to defend and indemnify Horton in the Holmes
suit, (c) the trial court improperly granted Markel summary judgment
on Horton=s claims of fraud and misrepresentation asserted after
Markel moved for summary judgment, and (d) the trial court improperly
denied Horton=s motion to continue the hearing on Markel=s motion for
summary judgment.

III.  Standard of Review








We review the trial court=s grant of summary
judgment de novo.  Provident Life & Accident Ins. Co. v. Knott, 128
S.W.3d 211, 215 (Tex. 2003).  To be entitled to summary judgment, the movant
has the burden of showing there are no genuine issues of material fact as to
one or more of the essential elements of the plaintiff=s cause of action.  Tex. R. Civ. P. 166a.  In reviewing
the record and determining whether a material fact issue precludes summary
judgment, evidence favorable to the non-movant will be taken as true, every
reasonable inference must be indulged in favor of the non-movant, and any
doubts must be resolved in the non-movant=s favor.  Nixon
v. Mr. Prop. Mgmt. Co., Inc., 690 S.W.2d 546, 548B49 (Tex. 1985).  

IV.  Analysis

A.      The
Markel Summary Judgment

In their motions for summary judgment, Markel and Sphere
Drake argued inter alia they had no duty to defend Horton in the
underlying suit because the Holmes petition did not allege
Ramirez=s work caused
damage.  Because this argument is potentially dispositive, we address it first.

1.       The Duty
to Defend: the AEight Corners@ Rule

An insurer=s duty to defend its insured is determined
by the Aeight corners@ rule, which
requires that we compare the allegations in the petition filed against the
insured with the coverage afforded by the insurance policy.  King v. Dallas
Fire Ins. Co., 85 S.W.3d 185, 187 (Tex. 2002).  If a petition does not
allege facts within the scope of coverage, an insurer is not legally required
to defend a suit against its insured.  Nat=l Union Fire Ins.
Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc., 939 S.W.2d 139,
141 (Tex. 1997) (per curiam).  On the other hand, an insurer is obligated to
defend a lawsuit if the facts alleged in the pleadings give rise to any claim
within the coverage of the policy.  Utica Nat=l Ins. Co. of Tex.
v. Am. Indem. Co., 141 S.W.3d 198, 201 (Tex. 2004).  AWhen applying the
eight corners rule, we give the allegations in the petition a liberal
interpretation.@  Merchants Fast Motor Lines, Inc.,
939 S.W.2d at 141.  The insurer owes a duty to defend if the third-party
petition Apotentially@ states a claim
within coverage.  See id.








In reviewing the pleadings in light of the insurance policy=s provisions, we
focus on the petition=s factual allegations showing the origin
of the damages, and not on the legal theories alleged.  Merchants Fast Motor
Lines, Inc., 939 S.W.2d at 141.  Although we strictly construe the
pleadings against the insurer and resolve any doubt in favor of coverage, not
every doubt requires resolution of the duty to defend in favor of the insured. 
We will not read facts into the petition, nor will we look outside of the
petition, or imagine factual scenarios which might trigger coverage.  Merchants
Fast Motor Lines, Inc., 939 S.W.2d at 142.  Thus, the duty to defend is not
affected by facts ascertained before suit or developed during the process of
litigation, or by the ultimate outcome of the suit.  See Heyden Newport
Chem. Corp. v. S. Gen. Ins. Co., 387 S.W.2d 22, 25 (Tex. 1965).  

If an insurer has a duty to defend its insured against any
claim pleaded in the petition of the underlying suit, then the insurer is
required to defend its insured against all claims in that petition.  See
Stumph v. Dallas Fire Ins. Co., 34 S.W.3d 722, 728 (Tex. App.CAustin 2000, no
pet.).  Our natural starting point is therefore a review of the coverage
afforded by the policy.

a.       The
Markel Policy

Horton argues it is an additional insured under Ramirez=s commercial
general liability insurance policy with Markel, and as an additional insured,
it is entitled to indemnification and defense in the Holmes lawsuit.  The
policy, effective from September 16, 2001 to September 16, 2002, specifically
lists Horton as an additional insured, Abut only with
respect to liability arising out of >[Ramirez=s] work= for [Horton] by
or for [Ramirez].@ 

b.       The
Holmes Petition

The factual allegations
in the Holmes petition include in pertinent part:

On or about July 3, 2001, Plaintiffs James and Cicely Holmes purchased
a home located at 2330 Pin Hook Ct., Seabrook, Texas, from [prior owners. 
Prior owners] purchased the property on or about August 17, 2000, from [the
original purchasers].  The original purchasers acquired the property on April
20, 1993 from D. R. Horton, which designed and built the home . . . .

In October 2001, shortly after moving into the residence, the
Holmes[es] discovered mold in the home.  That mold was tested and found to be
of highly toxic strain, present in significant concentrations and scattered
throughout various locations in the residence.  As a result, and [sic] the
family was ordered to vacate the home immediately and forced to obtain
alternate accommodations.








Treatment of the mold and attempted remediation of the home was
immediately commenced.  During the course of the remediation, it was discovered
that numerous latent defects existed in the construction, design and
workmanship of the house.  These problems include, but are not limited to,
(1) problems with the flashing around the roof and chimney, and prior
attempted repairs of that roof and flashing, (2) the design and
construction of the chimney and attempted repairs of the chimney, and (3) construction
design and workmanship of the roof and vent pipes.  Also discovered were
defects in the windows and window framing which facilitated water intrusion
into the home and mold propagation. 

As a result of these deficiencies in the design, construction and
workmanship of their residence, as well as faulty, incomplete and negligent
attempts to repair those defects, the Holmes[es] have incurred substantial
expenses associated with repairing the deficiencies, remediation/abatement of
the mold in the residence, replacement/disposal of contaminated personal
effects, relocation expenses and attorney fees.  Although D. R. Horton was
notified on repeated instances of the deficiencies and/or defects, D. R. Horton
refused and/or failed in its attempts to make the necessary repairs in a good
and workman like manner, thus causing the Holmes= [sic] damage.

Defendants negligently, carelessly
and wrongfully failed to use reasonable care in the construction and repair of
that residence commensurate with the requirements of residential building
standards of performance and failed to use proper and adequate materials in
that construction and those repairs attempted.  Such negligence resulted in a
subsequent invasion of toxic mold contaminating the air and living environment
in and around the residence rendering the structure uninhabitable and fouling
the personal property of the Plaintiffs.

 

c.       Comparison of the Policy and the
Pleadings

Pursuant to the
eight corners rule, we compare the factual allegations of the Holmes petition
with the language of the Markel policy to determine if the facts alleged in the
petition give rise to any claim within the coverage of the policy.  See
Utica Nat=l Ins. Co. of Tex., 141 S.W.3d at
201.  








The plain language
of the additional insured endorsement limits Markel=s liability to
those claims arising out of work Ramirez performed for Horton.  The Holmes
petition does not list Ramirez as a defendant, does not make any reference to
Ramirez, and does not allege the Holmeses were damaged by the acts or omissions
of any person or entity other than Horton.  Given their most liberal
interpretation in favor of coverage, the factual allegations in the Holmes petition
cannot be interpreted as stating a claim for damages arising from Ramirez=s work. 

Horton argues that
because the petition is to be interpreted from the standpoint of the insured,[9]
we must accept Horton=s conclusion that the Holmes
allegations arise from Ramirez=s work.  This argument misapprehends the
object of our inquiry.  Our task is not to determine if the underlying facts
that prompted the allegations are covered, but whether the petition alleges facts
that are covered.

Horton correctly
argues we may draw inferences from the petition that may lead to a finding of
coverage.  An inference is a fact or proposition drawn from an admitted or
otherwise proven fact.  Marshall Field Stores, Inc. v. Gardiner, 859
S.W.2d 391, 400 (Tex. App.CHouston [1st Dist.] 1993, writ dism=d w.o.j.) (op. on
reh=g).  It is a
logical consequence flowing from a fact.  Id.  In other words, the eight
corners rule does not require us to ignore those inferences that logically flow
from the facts alleged.  See Allstate Ins. Co. v. Hallman, 159
S.W.3d 640, 645 (Tex. 2005) (although the petition against the insured
homeowner did not contend the event alleged to have caused damage was
undertaken with a profit motive, the Court inferred a profit motive and found
the claims fell within a Abusiness pursuits@ exclusion to the
policy because A[o]ne generally does not allow limestone
mining with dynamite blasting to occur on his or her property without some
expectation of remuneration or monetary gain.@).  We may not,
however, rely upon facts supplied by extrinsic evidence.  Argonaut Sw. Ins.
Co. v. Maupin, 500 S.W.2d 633, 636 (Tex. 1973) (AThe duty to defend
does not depend on what the facts are, or what might be determined finally by
the trier of the facts.  It depends only on what the facts are alleged to be.@).








We recognize that
some state and federal courts interpret Texas law to permit a court to consider
extrinsic evidence in determining whether a petition states a covered claim.[10] 
To date, however, the Texas Supreme Court has not recognized such an
exception.  See, e.g., GuideOne Elite Ins. Co. v. Fielder Road Baptist
Church, 197 S.W.3d 305, 309B10 (Tex. 2006) (refusing to recognize an
exception to the eight corners rule to consider evidence relating both to
coverage and liability); Hallman, 159 S.W.3d at 644B45 (inferring a
profit motive from the nature of the activity rather than relying on extrinsic
evidence of a profit motive); Am. Physicians Ins. Exch. v. Garcia, 876
S.W.2d 842, 847B48 (Tex. 1994) (the duty to defend Ais determined solely
by the allegations in the pleadings filed against him . . . [i]f a petition
does not allege facts within the scope of coverage, an insurer is not legally
required to defend a suit against its insured.@) (emphasis
added).  Because the duty to defend is determined by the allegations rather
than the underlying facts, a party=s knowledge of
underlying facts does not affect that determination.  See Argonaut Sw. Ins. Co., 500 S.W.2d
at 636 (AThe duty to defend
does not depend on what the facts are . . . .@); 46 Tex. Jur. 3d, Insurance Contracts &
Coverage ' 1018 (1995). 








Although Horton
produced a significant amount of summary judgment evidence that is relevant to
both coverage and liability and that links Ramirez to the injuries claimed by
the Holmeses, an insured cannot supply such factual allegations when the
pleadings and reason do not.[11] 
See Heyden Newport Chem. Corp., 387 S.W.2d at 24 (A[I]n determining
the duty of a liability insurance company to defend a lawsuit the allegations
of the complainant should be considered in the light of the policy provisions
without reference to the truth or falsity of such allegations and without
reference to what the parties know or believe the true facts to be . . . .@) (emphasis
added).  To recognize such an exception Awould by necessity
conflate the insurer=s defense and indemnity duties without
regard for the policy=s express terms.@  GuideOne,
197 S.W.3d at 310.  Accordingly, we affirm the summary judgment in favor of
Markel on the issue of Markel=s duty to defend.  

When a trial court=s order granting
summary judgment does not specify the grounds relied upon, we must affirm
summary judgment if any of the summary judgment grounds are meritorious.  FM
Props. Operating Co. v. City of Austin, 22 S.W.3d 868, 872B73 (Tex. 2000). 
Having found that the application of the eight corners rule supports the
judgment, we need not and do not consider the other challenges raised by Horton
regarding Markel=s duty to defend.

2.       The Duty to Indemnify








An insurer=s duty to defend
is separate and distinct from its duty to indemnify.  Farmers Tex. County
Mut. Ins. Co. v. Griffin, 955 S.W.2d 81, 82 (Tex. 1997) (per curiam).  Unlike
the duty to defend, the duty to indemnify is based on facts proven, not on
pleadings.  Comsys Info. Tech. Servs., Inc. v. Twin City Fire Ins. Co.,
130 S.W.3d 181, 190 (Tex. App.CHouston [14th Dist.] 2003, pet. denied).

Even though we do not
look at the specific legal theories alleged to determine the duty to indemnify,
if the underlying petition does not raise factual allegations sufficient to
invoke the duty to defend, then even proof of all of those allegations could
not invoke the insurer=s duty to indemnify.  Reser v. State
Farm Fire & Cas. Co., 981 S.W.2d 260, 263 (Tex. App.CSan Antonio 1998,
no pet.).  For this reason, the same arguments that disposed of Markel=s duty to defend
also dispose of its duty to indemnify.  See Griffin, 955 S.W.2d at 84.
Because the Holmes suit did not allege facts covered by the policy, even
proof of those facts would not  trigger coverage. We therefore affirm the trial
court=s summary judgment
in favor of Markel on the issue of Markel=s duty to
indemnify.  

3.       Horton=s Extra-Contractual Claims Against Markel

 

Horton argues that
even if we affirm summary judgment in Markel=s favor on the
issues of Markel=s duties to defend and indemnify, the
judgment should be a partial summary judgment and not a Atake-nothing@ summary judgment
because Markel=s motion did not address the allegations of fraud[12]
and of statutory and common law misrepresentation raised in Horton=s supplemental
petition.  Horton=s first supplemental petition, filed after
Markel moved for summary judgment, adds an allegation of Aviolations of the
Texas Insurance Code/misrepresentation@ that is not
addressed in Markel=s motion.  In its brief, Horton clarifies
this allegation as a claim of Astatutory and common law
misrepresentation.@








Horton is correct;
Markel did not move for summary judgment on Horton=s
misrepresentation claims.  Generally, a court may not grant judgment on a cause
of action not addressed in a motion for summary judgment.  Chessher v. Sw.
Bell Tel. Co., 658 S.W.2d 563, 564 (Tex. 1983) (per curiam).  Markel=s motion requested
judgment on the claims Horton asserted in its original petition, but did not
seek judgment on the later-filed misrepresentation claims.  Because the trial
court=s judgment
included these claims, it granted more relief than requested.  See Mafrige
v. Ross, 866 S.W.2d 590, 591 (Tex. 1993),  (summary judgment may not be
granted on a ground not addressed in the motion), overruled on other
grounds, Lehmann v. Har-Con Corp., 39 S.W.3d 191 (Tex. 2001).  We therefore
reverse the judgment in favor of Markel to the extent that it grants summary
judgment on Horton=s claims of statutory and common law
misrepresentation and remand that portion of the case for further proceedings
consistent with this opinion.  

4.       Motion for Continuance

Horton also
appeals the denial of its motion to continue the hearing on Markel=s motion for
summary judgment.  Within Horton=s response to
Markel=s motion for
summary judgment is a request to continue the hearing on Markel=s motion for
summary judgment in order to conduct additional discovery.  Neither Markel=s response nor a
copy of the order denying the motion has been presented for our review. 
Moreover, there is no indication Markel ever offered a proposed order,
conferred with opposing counsel regarding the proposed continuance, or even set
the motion for hearing or submission. 

We will not
disturb a trial court=s order denying a motion for continuance
unless the trial court has committed a clear abuse of discretion.  BMC
Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 800 (Tex. 2002).  A trial
court Aabuses its
discretion when it reaches a decision so arbitrary and unreasonable as to
amount to a clear and prejudicial error of law.@  Johnson v.
Fourth Court of Appeals, 700 S.W.2d 916, 917 (Tex. 1985). Here, however,
the evidence does not support a conclusion that the trial court acted
unreasonably.








Even if we were to
assume that the parties agreed to have the motion for continuance heard at the
hearing on the motion for summary judgment and the trial court denied the
motion, we cannot say denial was arbitrary or unreasonable.  On its face,
Markel=s motion failed to
comply with Tex. R. Civ. P. 252
(application for continuance must Astate that the
continuance is not sought for delay only, but that justice may be done@), Harris (Tex.) Civ. Dist. Ct. Loc. R.
3.3.1 (Motions Ashall be accompanied by a proposed order
granting the relief sought.@); Harris
(Tex.) Civ. Dist. Ct. Loc. R. 3.3.3 (AMotions shall
state Monday at 8:00 a.m. as the date for written submission.  This date shall
be at least 10 days from filing, except on leave of court.@); and Harris (Tex.) Civ. Dist. Ct. Loc. R.
3.3.6 (requiring a certificate of conference).  Furthermore, when a party
receives notice of a summary judgment hearing and the notice gives more than
the twenty‑one days required by the rules of civil procedure, denial of a
motion for continuance based on lack of time to prepare generally is not an
abuse of discretion.  Karen Corp. v. Burlington N. & Santa Fe Ry. Co.,
107 S.W.3d 118, 124  (Tex. App.CFort Worth 2003, pet. denied).  Here,
Markel set the hearing on its motion for summary judgment thirty-five days
after the motion was filed.  We therefore overrule Horton=s procedural challenge.


B.      The Sphere Drake Summary Judgment

Horton and Sphere
Drake agree that the most recent Sphere Drake policy insuring Horton expired on
September 16, 1999, nearly three years before the Holmeses sued Horton. 
Despite the expiration of the policies, Horton argues the Sphere Drake policies
provide coverage for the Holmeses= claims.  

Sphere Drake moved
for traditional summary judgment on Horton=s claims,  arguing
its policies afford no coverage because (1) the Holmeses lacked standing
to bring suit against Horton, or Horton was judicially estopped from denying
that the Holmeses lacked standing, (2) the Holmes pleadings did not
allege damages manifested prior to the expiration of the Sphere Drake policies
in 1999, (3) the Holmes pleadings did not allege damages arising
from Ramirez=s work, and (4) Horton had not previously
produced evidence that Ramirez worked on the residence. 

1.       Lack of Standing








Sphere Drake
argues that Texas law bars a purchaser of real property from asserting a claim
for property damage occurring before the purchaser owned the property unless
the deed expressly transfers the cause of action to the purchaser.  See Lay
v. Aetna Ins. Co., 599 S.W.2d 684, 686 (Tex. Civ. App.CAustin 1980, writ
ref=d n.r.e.) (holding
that a cause of action for injury to real property is a personal right which
belongs to the person who owns the property at the time of the injury; without
express provision, the right does not pass to a subsequent purchaser of the
property).  According to Sphere Drake, the individuals who owned the residence
before the Holmeses did not transfer their property damage claims, if any, to
the Holmeses.  Therefore, Sphere Drake contends the Holmeses lack standing to
assert claims for property damage occurring prior to their purchase of the
residence in 2001. Because the Sphere Drake policies expired long before the
Holmeses bought the property, Sphere Drake argues the Holmeses lack standing to
assert covered claims against Horton. 

This argument is
without merit for several reasons.  First, the argument lacks factual support. 
Although Sphere Drake claims AIt is undisputed that the [Holmeses]
purchased their home in 2001 without any transfer of possible damage claims,@ Sphere Drake
produced no competent summary judgment evidence in support of this contention. 
Second, although Sphere Drake reurges this argument on appeal, it previously
conceded the Holmeses had standing to bring their claims.[13] 
Finally, in its reply to Horton=s response to the motion for summary
judgment, Sphere Drake further admits the Holmeses= standing to bring
claims Adoes not have any
bearing on coverage.@  Thus, we cannot affirm Sphere Drake=s summary judgment
on the basis that the Holmeses lacked standing to sue Horton.[14]  


In a related
argument, Sphere Drake contends that because Horton filed a verified answer in
the Holmes suit asserting the Holmeses lacked standing, Horton is now
judicially estopped from denying that the Holmeses lacked standing.  This
argument must also fail.  Setting aside Sphere Drake=s admission that
the issue of the Holmeses= standing has no bearing on coverage
issues, Sphere Drake has not shown that judicial estoppel applies.  








The doctrine of
judicial estoppel applies only if (1) the party against whom judicial estoppel
is asserted made a prior inconsistent position in a judicial proceeding; (2)
the party successfully maintained the prior position; (3) the prior
inconsistent statement was not made inadvertently or because of mistake, fraud,
or duress; and (4) the statement was deliberate, clear, and unequivocal.  Vinson
& Elkins v. Moran, 946 S.W.2d 381, 396 (Tex. App.CHouston [14th
Dist.] 1997, writ dism=d by agr.).  In the Holmes suit,
Horton filed a sworn pleading asserting the Holmeses lacked standing to assert
their claims; however, Horton did not successfully maintain this position. 
Thus, we cannot affirm Sphere Drake=s summary judgment
on the grounds that Horton is judicially estopped from asserting that the
Holmeses lacked standing to assert their claims.[15]

2.       Manifestation of Damages

Sphere Drake next
argues its policies provide no coverage for damages that did  not manifest
during the time its policies were in effect.  It is undisputed that Sphere
Drake=s policies expired
in 1999, and there are no allegations mold was present in the house before it
was purchased by the Holmeses.  Horton further admits there are no complaints
of mold or damage to the house prior to October, 2001. 








As Sphere Drake
points out, both the Fifth Circuit and Texas state courts have interpreted
policies to afford coverage only when the damages manifest during the policy
period.  See, e.g., Coastal Ref. & Mktg., Inc. v. Coastal Offshore Ins.,
Ltd., 14-94-01140-CV, 1996 WL 87205, *3 (Tex. App.CHouston [14th
Dist.] Feb. 29, 1996, no writ) (not designated for publication); Cullen/Frost
Bank of Dallas, N.A. v. Commonwealth Lloyd's Ins. Co., 852 S.W.2d 252, 257
(Tex. App.CDallas 1993), writ denied per curiam, 889
S.W.2d 266 (Tex. 1994); Dorchester Dev. Corp. v. Safeco Ins. Co., 737
S.W.2d 380, 381B82 (Tex. App.CDallas 1987, no
writ); Am. Home Assurance Co. v. Unitramp, Ltd., 146 F.3d 311, 313B14 (5th Cir.
1998); Snug Harbor Ltd. v. Zurich Ins. Co., 968 F.2d 538, 544B45 (5th Cir.
1992); but see Pilgrim Enters., Inc. v. Maryland Cas. Co., 24 S.W.3d
488, 497B98 (Tex. App.CHouston [1st
Dist.] 2000, no pet.) (holding that insurance coverage was triggered on the
date of exposure to conditions that caused damage, rather than from date damage
was manifested).  Sphere Drake urges us to conclude that because the Holmes
petition did not allege damages before 2001, Sphere Drake=s policies
afforded no coverage, and thus, Sphere Drake had no duty to defend or indemnify
Horton.








Sphere Drake,
however, overlooks that each of the cases cited above construes specific policy
language.  See Coastal Ref. & Mktg., Inc., 1996 WL 87205at *1 (construing
the insuring agreement provision); Cullen/Frost Bank of Dallas, 852
S.W.2d at 256B58 (construing the insuring clause and the terms Aproperty damage@ and Aoccurrence@); Dorchester
Dev. Corp., 737 S.W.2d at 381B82 (construing the
insuring agreement provision and an exclusion); Unitramp, Ltd., 146 F.3d
at 313 n.1 (construing the Aoccurrence@ clause); Snug
Harbor, 968 F.2d at 542 n.9 (construing the insuring agreement provision); Pilgrim
Enters., Inc., 24 S.W.3d at 499 (construing the Aoccurrence@ and Abodily injury or
property damage@ clauses); see also Am.
Physicians Ins. Exch., 876 S.W.2d at 844 n.4 (discussing differences
between a Aclaims-made@ policy and an Aoccurrence@ policy); Allstate
Ins. Co. v. Hicks, 134 S.W.3d 304, 309 (Tex. App.CAmarillo 2003, no
pet.) (A[T]he term Aoccurrence@ is typically a
defined term in liability insurance policies . . . [t]hat the term is given
differing constructions in different cases involving different policies is not
surprising . . . .@).  In contrast,
Sphere Drake failed to offer evidence that the specific language of its
policies limits coverage to damage manifested within the policy period.[16] 
Although Sphere Drake attached a copy of a May 14, 2003 letter to Horton=s attorneys
purporting to recite policy terms and denying coverage of claims previously
made by the Holmeses against Horton,[17]
the letter was offered solely as evidence that Drake Aissued liability
policies to Ramirez for the period September 16, 1992 through September 16,
1999, with Horton listed as an additional insured under the policies.@[18]  Significantly,
the letter was not offered as summary judgment evidence of the terms of the
policies.  

Because Sphere
Drake moved for traditional summary judgment, all doubts must be resolved in
the nonmovant=s favor.  See Nixon, 690 S.W.2d at 548B49.  Neither we
nor the trial court can simply presume that the terms recited in the
denial-of-coverage letter accurately reflect all relevant policy terms,
particularly when Sphere Drake made no such representations.  Thus, we do not
reach the question of whether the particular terms of Sphere Drake=s policies provide
coverage only if damages manifest during the policy period.  Because Sphere
Drake has not conclusively demonstrated the absence of a material fact
regarding the terms of its policies, we will not affirm the summary judgment on
the grounds that those terms restrict coverage to claims that manifest damage
during the policy period.  See Pilgrim Enters., Inc., 24 S.W.3d at 497B99 (explaining
that the policy=s language determines what events trigger
coverage). 

3.       No Allegations Regarding Ramirez or Ramirez=s Work

Like Markel,
Sphere Drake moved for summary judgment on the additional ground that the Holmes
petition failed to state a covered claim because none of its factual allegations
state or infer that the injuries arose out of Ramirez=s work.  Unlike
Markel, however, Sphere Drake offered no evidence that its coverage is limited
to claims arising from Ramirez=s work.[19] 
Thus, we cannot affirm Sphere Drake=s summary judgment
on this basis.  

4.       Failure to Produce Evidence Ramirez Performed Work
Causing Damages








Finally, Sphere
Drake moved for traditional summary judgment on the basis that Horton Ahas not produced
any evidence whatsoever indicating that Ramirez actually performed any work on
the Home or any evidence that such work caused the alleged damages@ to the Holmeses.[20] 
Specifically, Sphere Drake complained that in response to Sphere Drake=s requests for
production, Horton Afailed to produce any specific
documentation indicating the time, place and work specifically performed by
Ramirez, undoubtedly because such documentation does not exist.@  Again, absent
proof the Sphere Drake policy provided coverage only for damages caused by
Ramirez=s work, this
argument does not form a basis for summary judgment.








In sum, Horton and
Sphere Drake have each been at great pains to explain to the trial court and to
this court how the Aeight corners@ rule affects this
case, while in fact, only Afour corners@ were presented. 
While the parties have argued over what Sphere Drake=s policies mean,
they have neglected to demonstrate what the policies  actually say.  None of
the briefs have cited to a Sphere Drake insurance policy in the record, nor has
our review of the record uncovered the additional insured endorsement that is
central to Horton=s claims against Sphere Drake.  In the
absence of the policy, we can not perform the Aeight corners@ analysis required
to determine the scope of Sphere Drake=s defense
obligations to Horton, or to determine the extent to which Sphere Drake agreed
to indemnify Horton.  Indeed, virtually none of Sphere Drake=s arguments can be
assessed without first ascertaining the terms of the policies.[21] 
We therefore agree with Horton that Sphere Drake has failed to meet its burden
of proof, and accordingly reverse the order of April 20, 2005 granting Sphere
Drake summary judgment, and remand that portion of the case for further
proceedings consistent with this opinion.

V.  Conclusion

Because neither
the factual allegations of the Holmes suit nor any reasonable inferences
drawn from the Holmes pleading assert claims against Horton that are
insured by Markel, we affirm the judgment in favor of Markel on all claims
asserted in Horton=s original petition; however, because
Markel did not move for summary judgment on the statutory and common law
misrepresentation claims asserted in Horton=s first
supplemental petition, we reverse the judgment in favor of Markel as to those
claims only.  We therefore sever Horton=s extracontractual
claims against Markel for statutory and common law misrepresentation, and
remand those claims to the trial court for further proceedings consistent with
this opinion.

In addition,
because the evidence offered by Sphere Drake in support of its motion for
summary judgment is inadequate to support the judgment as a matter of law, we
reverse the judgment in favor of Sphere Drake, sever those claims from Horton=s contractual
claims against Markel, and remand Horton=s claims against
Sphere Drake to the trial court for further proceedings consistent with this
opinion. 

 

 

 

 

/s/      Eva M. Guzman

Justice

 

 

Judgment rendered
and Substitute Memorandum Opinion on Rehearing filed October 26, 2006.

Panel consists of
Justices Fowler, Edelman, and Guzman.

 









[1]  Markel is the successor to Terra Nova Insurance Co.,
Ltd.; the term AMarkel@ is used herein
to refer to both.  





[2]  Sphere Drake is the successor to Odyssey Re London
Ltd.; the phrase ASphere Drake@
therefore refers to both.  





[3]  D. R. Horton - Texas, Ltd. is the successor in
interest to D.R. Horton Homes, Inc.; the word AHorton@ refers to both.





[4]  James and Cicely Holmes v. D.R. Horton Homes,
Inc. and D. R.
Horton - Texas, Limited, Cause No. 2002-38572 (280th Dist. Ct., Harris County,
Tex. July 31, 2002). 





[5]  Horton built the home in 1992.





[6]  A copy of the policy is not presented for our
review.





[7]  Beginning in 1999, Ramirez was insured by Terra
Nova; however, the parties agree that Markel is Terra Nova=s successor in interest.





[8]  In a denial letter dated May 14, 2003, Sphere Drake
reserved its rights to deny, modify, or limit coverage on other grounds.  The
Holmeses amended their petition on October 9, 2003, and Horton contends Sphere
Drake again denied coverage.  Although the existence or contents of a second
denial letter is not known, the parties do not contend any such letter limits
the bases for a denial of coverage by Sphere Drake.  





[9]  See King, 85 S.W.3d at 188 (courts must view
the event that is alleged to have caused the injury from the view point of the
insured).





[10]  See, e.g., State Farm Fire & Cas. Co. v. Wade, 827 S.W.2d 448, 452B53 (Tex. App.CCorpus Christi 1992, writ denied); Gonzales
v. Am. States Ins. Co. of Texas, 628 S.W.2d 184, 187 (Tex. App.CCorpus Christi 1982, no writ); Cook
v. Ohio Cas. Ins. Co., 418 S.W.2d 712, 715B16 (Tex. App.CTexarkana 1967, no writ); W. Heritage Ins. Co. v. River
Entm=t, 998 F.2d 311, 313 (5th Cir. 1993); but see
Tri-Coastal Contractors, Inc. v. Hartford Underwriters Ins. Co., 981 S.W.2d
861, 863B64 (Tex. App.CHouston [1st Dist.] 1998, pet.
denied) (applying the strict eight corners approach to reverse the trial court=s use of extrinsic evidence).





[11]  In its various motions for rehearing, Horton argues
that both the Texas Supreme Court and this court recognize an exception to the
eight corners rule to consider evidence related solely to coverage.  See
GuideOne, 197 S.W.3d at 308 (AAlthough
this Court has never expressly recognized an exception to the eight-corners
rule, other courts have.@); Pine Oak Builders, Inc. v. Great Am. Lloyds Ins.
Co., No. 14-05-00487-CV, 2006 WL 1892669, at *5 (Tex. App.CHouston [14th Dist.] July 6, 2006, no pet. h.) (A[M]any courts have stated that extrinsic evidence may
be used in duty-to-defend cases to establish fundamental coverage
facts . . . [but] courts do not allow evidence of the
specific alleged occurrence in order to determine whether the occurrence itself
is covered by the policy.@).   Horton argues that extrinsic evidence of Ramirez=s work relates solely to coverage, and under the
exception to the eight corners rule recognized in GuideOne and Pine
Oak, should be considered.  We must first point out that, contrary to Horton=s interpretation, neither case presented the question
whether an exception to the eight corners rule should be recognized to allow
courts to consider Aevidence relating solely to a fundamental coverage
issue.@  In both GuideOne and Pine Oak, the
authoring court declined to recognize an exception to the eight corners rule to
consider extrinsic evidence related to both coverage and liability.  GuideOne,
197 S.W.3d at 309B10; Pine Oak,  2006 WL 1892669, at *6. To the
extent that either opinion indicates that the authoring court would recognize
an exception to the eight corners rule to consider evidence related solely to
coverage, such language is mere dicta.  See Bayou Bend Homes, Inc. v.
Scottsdale Ins. Co., No. H-05-1544, 2006 WL 2037564, at * 5 (S.D. Tex. July
18, 2006) (AAlthough the Texas Supreme Court explicitly rejected
the use of extrinsic evidence that was relevant both to coverage and to the
merits of the underlying action, it did not rule on the validity of a more
narrow exception that would allow extrinsic evidence solely on the issue of
coverage.@).  More importantly to the disposition of this case,
both GuideOne and Pine Oak refused to consider extrinsic evidence
of the type at issue here: i.e., evidence related to both coverage and
liability. 





[12]  Because neither Horton=s original petition nor its first supplemental petition stated a cause
of action for fraud, this claim was not alleged or adjudicated. 





[13]  See Tex.
Prop. Code Ann. ' 27.002(a) (Vernon Supp. 2005) (the Residential
Construction Liability Act applies to and permits an action by a subsequent
purchaser of a residence against a contractor to recover damages arising from a
construction defect).  





[14]  We do not address the extent to which the reasoning
of Lay applies to these facts, which falls within the Residential
Construction Liability Act, and in which (a) injuries to both personal and real
property were alleged, and (b) no injuries to either personal or real property
were alleged to have occurred prior to the Holmeses= purchase of the real property.





[15]  We do not reach the question of whether a party may
be judicially estopped from asserting a legal theory, as opposed to a fact.





[16]  Although application of the Aeight corners@
rule requires the examination of two documents, Sphere Drake failed to offer
evidence of the contents of either.  Sphere Drake attached a copy of the
original petition in the Holmes suit, but that pleading had been
superceded for almost eighteen months at the time Sphere Drake moved for
summary judgment.  However, Horton supplied the deficiency, attaching a copy of
the amended petition in the Holmes suit to its response to Markel=s motion for summary judgment, and incorporating that
evidence by reference to specific exhibits in its response to Sphere Drake=s motion for summary judgment.  Thus, the Holmes amended
petition was properly included as summary judgment evidence.  See Wilson v.
Burford, 904 S.W.2d 628, 629 (Tex. 1995) (ARule 166a(c) plainly includes in the record evidence attached either to
the motion or to a response.@).





[17]  The Holmeses subsequently amended their petition,
and Horton claims that Sphere Drake  again denied coverage.  





[18]  The letter lists the effective dates, limits, and
policy numbers of Apolicies issued to Rosendo Ramirez@ from September 16, 1992 through September 16, 1999,
but does not state that Horton was an additional insured.





[19]  Horton alleges that Sphere Drake=s coverage included much more than Ramirez=s work, and extended to coverage for Aproperty damage arising out of premises operations,
completed operations . . .   and the work of independent contractors.@





[20]  We emphasize that a motion for traditional summary
judgment is not converted to a motion for no-evidence summary judgment simply
by including the statement that the nonmovant Ahas not produced any evidence@ of
a particular fact prior to the date the motion was filed.  Such an allegation
is ambiguous, and may be read to complain of inadequate discovery responses as
easily as the absence of evidence.  See Michael v. Dyke, 41 S.W.3d 746,
751 (Tex. App.CCorpus Christi 2001, no pet.) (where summary judgment
motion does not unambiguously state it is filed under Rule 166a(I) and does not
strictly comply with the requirements of that rule, it will be construed as a
traditional summary judgment motion).  Here, the remainder of Sphere Drake=s motion for summary judgment makes it clear that
Sphere Drake is complaining of Horton=s
failure to produce documentary evidence in response to discovery requests. 
Sphere Drake did not allege that evidence in another form did not exist.  In
fact, Horton supplemented its discovery with the names of two additional
witnesses on the discovery deadlineCcoincidentally,
the same day Sphere Drake filed its motion for summary judgmentCand produced evidence of Ramirez=s work by affidavit. 





[21]  Only Sphere Drake=s
argument concerning the Holmeses=
lack of standing can be evaluated without reference to the policy.