IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 4, 2008

Charles R. Fulbruge III
Clerk

No. 08-50042
Summary Calendar

GORE DESIGN COMPLETIONS, LTD.

Plaintiff-Appellant

v.

HARTFORD FIRE INS. CO.

Defendant-Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:06-CV-838

Before JOLLY, HIGGINBOTHAM, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:

Once again, we are faced with the seemingly simple task of applying the Texas "eight corners" rule to determine whether an insurance company owes a duty to defend an underlying liability lawsuit. Because we conclude that the statement of claim in the liability case asserted a claim that could fall within the coverage of the Hartford policy and is not clearly excluded by it, we reverse the summary judgment and remand to the district court.

## I. Factual Background

Hartford issued a commercial general liability policy to BaySys Technologies (the "Policy") containing the following "additional insured" coverage:

> Any person or organization with whom you agreed, because of a written contract or agreement or permit, to provide insurance such as is afforded under this Business Liability Coverage Form, but only with respect to your operations, "your work" or facilities owned or used by you.

Hartford has conceded that Appellant Gore Design Completions, Ltd. is an additional insured under the Policy.[1]

Gore entered into an agreement with Orient[2] to perform work on a Boeing 737 Business Jet (the "Aircraft"). Gore alleges that it subcontracted the installation and engineering of an in-flight entertainment/cabin management system (IFE/CMS) to BaySys which, in turn, subcontracted the work to Ron Orvis d/b/a AeroTask.[3] During the installation of the IFE/CMS, Gore alleges that AeroTask miswired a component, damaging the Aircraft.

Orient sued Gore and AeroTask, but not BaySys, and the case went to arbitration. In Orient's first amended statement of the claim ("Statement of Claim"), the paragraph defining Gore stated: "At all times, AeroTask and BaySys

---

[1] In its motion for summary judgment, Hartford stated: "While there are serious questions concerning whether Gore qualifies as an additional insured under the Hartford Policy, this Motion assumes . . . that Gore does hold that status." Having made that concession below, Hartford cannot now seek a contrary ruling from this court.

[2] The claim in question is asserted by both Orient Global Aviation and Orion Aviation. Both parties refer to the two as "Orient," and we will do the same.

[3] Orient phrases it this way: "Claimants desired to install a satellite communications system and cabin management system in the Aircraft."

were agents, partner[s], joint venturer[s], or otherwise acting on behalf of Gore, and their actions can be imputed to Gore."[4]

The Statement of Claim describes the agreement between Orient and Gore. It then states: "In order to complete the work under the Agreement, Gore employed several contractors including AeroTask and BaySys. . . . [U]nder the terms of the contract, Gore adopted all such contractors and subcontractors as its agents."

The Statement of Claim describes the allegedly negligent conduct to include: "Defendants improperly joined the Aircraft's electrical power panels. . . . In addition to improperly joining the AC and DC electrical systems, Defendants failed to properly supervise or inspect the work performed on the Aircraft's electrical system." Orient claimed that the Aircraft was grounded as a result of this conduct and that "[t]hese acts resulted in substantial physical damage to the Aircraft's electrical system and to a vast array of electrical equipment installed on the Aircraft." They accused Gore of negligence, gross negligence, negligent hiring and negligent supervision, as well as breaches of warranty, bailment damages and conversion.

Gore tendered defense of the arbitration action to Hartford under the Policy. Hartford declined to defend, alleging that the Statement of Claim did not set forth a claim within the Policy's coverage. Gore then filed this declaratory judgment action, and Hartford moved for summary judgment. Gore moved for partial summary judgment on Hartford's duty to defend it in the arbitration.[5] The district court concluded that the Statement of Claim did not allege a claim within the Policy coverage and, therefore, Hartford owed no duty to defend. As

---

[4] This phrase squarely implicated BaySys in the case. The next paragraph defines "Defendants" as Gore and Orvis: "Gore and Ronald Orvis d/b/a AeroTask (collectively referred to as 'Defendants')."

[5] Gore did not appeal (or mention) the district court's denial of Gore's own motion for summary judgment, so that motion is not before us.

a result, it did not reach the issue of whether any of the Policy exclusions applied. The district court also concluded that, because there was no duty to defend, there was also no duty to indemnify.[6] This appeal followed.

## II. Standard of Review

We review a grant of summary judgment de novo. Allstate Ins. Co. v. Disability Services of the Southwest, Inc., 400 F.3d 260, 262-63 (5th Cir. 2005). Summary judgment is proper when the pleadings and evidence on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex v. Catrett, 477 U.S. 317, 322 (1986) (citations omitted).

## III. Discussion

### A. The Texas "Eight Corners" Rule

The parties do not dispute that Texas law applies to this diversity lawsuit. In Texas, "[t]he eight-corners rule provides that when an insured is sued by a third party, the liability insurer is to determine its duty to defend solely from terms of the policy and the pleadings of the third-party claimant. Resort to evidence outside the four corners of these two documents is generally prohibited." GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church, 197 S.W.3d 305, 307 (Tex. 2006). The duty to defend does not depend upon the truth or falsity of the allegations: "A plaintiff's factual allegations that potentially support a covered claim is [sic] all that is needed to invoke the insurer's duty to

---

[6] Although our reversal on the duty to defend issue makes analysis of the duty to indemnify unnecessary, we note that the district court's conclusion on this matter was premature. Even if the Statement of Claim had not alleged matters within coverage, it did not preclude a situation where evidence at trial implicated BaySys's conduct and its Policy's coverage. See Northfield Ins. Co. v. Loving Home Care, Inc., 363 F.3d 523, 536 (5th Cir. 2004) (citing Farmers Tex. County Mut. Ins. Co. v. Griffin, 955 S.W.2d 81, 84 (Tex. 1997)) ("Texas law only considers the duty-to-indemnify question justiciable after the underlying suit is concluded, unless 'the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify.'").

defend." Id. at 310 (citing Heyden Newport Chem. Corp. v. S. Gen. Ins. Co., 387 S.W.2d 22, 26 (Tex. 1965)).

The rule is very favorable to insureds because doubts are resolved in the insured's favor:

> Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy. Stated differently, in case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in the insured's favor.

Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc., 939 S.W.2d 139, 141 (Tex. 1997) (citations omitted) (holding that, even under a liberal construction, the allegations in that petition did not fall within any potential coverage); see also King v. Dallas Fire Ins. Co., 85 S.W.3d 185, 187 (Tex. 2002) ("[W]e resolve all doubts regarding the duty to defend in favor of the duty.") When in doubt, defend.

Allegations are read liberally in favor of the insured. "Courts may not, however, (1) read facts into the pleadings, (2) look outside the pleadings, or (3) imagine factual scenarios which might trigger coverage." Guar. Nat'l Ins. Co. v. Azrock Indus., 211 F.3d 239, 243 (5th Cir. 2000). Yet "we may draw inferences from the petition that may lead to a finding of coverage." Gen. Star Indem. Co. v. Gulf Coast Marine Assocs., 252 S.W.3d 450, 456 (Tex. App. – Houston [14th Dist.] 2008, pet. denied). It is the factual allegations, not the legal theories, that control. Fed. Ins. Co. v. Ace Prop. & Cas. Co., 429 F.3d 120, 125 (5th Cir. 2005) (citing Nat'l Union Fire Ins. Co., 939 S.W.2d at 141).

B. Orient's Allegations

While not a model of clarity, the Statement of Claim in this case clearly references BaySys, contends that BaySys is Gore's agent and seeks to hold Gore responsible for its alleged negligence in hiring the wrong people for the job. Under the Policy, Gore is an additional insured with respect to BaySys's "operations" or "work." "Your work" is defined in the Policy as "work or operations performed by you or on your behalf." "Your" refers to BaySys. "Operations" is not defined in the Policy. Thus, if the Statement of Claim alleges liability against Gore "with respect to" BaySys's operations or work performed by or on its behalf, then the Policy covers Gore, subject to certain Policy exclusions discussed below.

Here the Statement of Claim clearly implicates BaySys's work by stating that BaySys was employed by Gore and acted as its agent. By making that statement in the section defining "Gore," the Statement of Claim could be read to include BaySys in the allegations against Gore. Although it could also be read another way, where there is doubt, there is a duty to defend. Hochheim Prairie Cas. Ins. Co. v. Appleby, No. 04-07-00028-CV, 2008 Tex. App. LEXIS 300 (Tex. App. – San Antonio Jan. 16, 2008, pet. filed). "[A]llegations [of the underlying petition] are given a liberal interpretation, and any doubts regarding whether the allegations trigger a defense are resolved in favor of the insured." Id. at *4 (citing Heyden Newport Chem. Corp., 387 S.W.3d at 26).

This case is similar to a case decided by the Dallas Court of Appeals. Global Sun Pools, Inc. v. Burlington Ins. Co., No. 05-03-00765-CV, 2004 Tex. App. LEXIS 7552 (Tex. App. – Dallas Aug. 23, 2004, no pet.). In that case, Global built a pool for the Reeds. They sued, alleging that Global sent "its builders to construct the pool and deck" and that, as a result of faulty workmanship, Mrs. Reed was injured when the deck railing collapsed. Id. at *2.

The actual builder of the pool, Paul Simmons, was not named in the petition. He had a policy of insurance naming Global as an additional insured and listing his business as installing pools. The court held that, construing the term "its builders" liberally, the petition stated a claim that was potentially within Simmons' policy coverage, although it did not name Simmons. Id. at *6. Accordingly, the court found that the insurance company had a duty to defend Global.

Similarly, our court construed vague allegations to support a conclusion that the defendant could be his employer's permissive user under the employer's automobile policy. Liberty Mutual Ins. Co. v. Graham, 473 F.3d 596, 601 (5th Cir. 2006). In that case, the plaintiff alleged a long history of the defendant's personal use of the vehicle with company permission and noted that the company "regularly allows some of its employees, including Defendant Graham" to drive business vehicles for personal use. Id. at 599. However, the petition did not expressly allege that the defendant was a permissive user on the occasion in question. Id. Applying the liberal interpretation rules required by Texas law, our court held that the insurer owed the defendant a duty to defend. Id. at 601-02.

We have an even clearer case here, since BaySys is expressly mentioned, and Gore is expressly accused of being responsible for BaySys as its agent. Cf. Indian Harbor Ins. Co. v. Valley Forge Ins. Group, No. 06-20707, 2008 WL 2717800 (5th Cir. July 11, 2008) (no duty to defend because there was no allegation of agency or control as required to bring the case within the policy's coverage). Accordingly, unless an exclusion applies under the Policy, Hartford has a duty to defend.

C. Policy Exclusions

Hartford asserted three exclusions in the alternative to its position that there was no potential coverage under the general insuring agreement for the allegations in the Statement of Claim.[7]  "[W]hen the plaintiff's petition makes allegations which, if proved, would place the plaintiff's claim within an exclusion from coverage, there is no duty to defend."  Gulf States Ins. Co. v. Alamo Carriage Serv., 22 F.3d 88, 91 (5th Cir. 1994).  Texas law places the burden of proving that an exclusion applies on the insurance company.  TEX. INS. CODE ANN. § 554.002 (Vernon 2005).  Exclusions are narrowly construed, and all reasonable inferences must be drawn in the insured's favor.  Gen. Star, 252 S.W.3d at 458-59.  With these general principles in mind, we turn to the exclusions alleged.

### 1. "Care, Custody or Control"

The Policy excludes: "'Property damage' to: . . . (4) Personal property in care, custody or control of the insured."  In general, only the area being repaired by an insured is considered under Texas law to be in that insured's care, custody or control.  See Goswick v. Employers' Cas. Co., 440 S.W.2d 287, 290-91 (Tex. 1969) (holding that insured repairing defective pump on a well was in control of the pump, but not the well); see also SnyderGeneral Corp v. Century Indem. Co., 113 F.3d 536, 539 (5th Cir. 1997) ("As [the insurer] failed to establish that [the insured] totally and physically used or controlled the entire pool of groundwater at the Wilmington facility, it was not entitled to summary judgment."); Nat'l Standard Ins. Co. v. Wilson Indus., Inc., 556 S.W.2d 838, 839 (Tex. Civ. App. – Houston [14th Dist.] 1997, writ ref'd n.r.e.) (although the ship in question was

---

[7] As the moving party on a summary judgment motion, Hartford had a duty to raise specifically each exclusion upon which it relied.  We limit our discussion to those exclusions raised by Hartford below and on appeal.  We express no opinion as to whether any other exclusion contained within the Policy might apply.

being used by the insured "for the purpose of accomplishing the work" it was not in the care, custody or control of the insured). Here, therefore, even if one could argue that the IFE/CMS system or electrical system generally was in Gore's "control" during the work being performed, it does not follow that the entire Aircraft was.

However, if the Statement of Claim alleged that the Aircraft was in the care, custody or control of Gore at the time of the alleged wrongdoing, the exclusion would apply. Hartford contends that is the exact situation presented here. At first blush, Hartford's position seems correct. The bailment portion of the Statement of Claim (which was not incorporated by reference in the negligence sections) describes Orient's entrustment of the Aircraft to Gore's "care" and sues for breach of bailment. However, as pointed out by Gore, the Statement of Claim does not indicate that the Aircraft was in Gore's "care" at the time of the alleged wrongdoing. Indeed, the Statement of Claim contends that Gore breached the following portion of its contract: "All Services shall be performed by [Gore] at its facility located in San Antonio, Texas." This allegation, together with the lack of discussion about in whose hands the Aircraft was at the time of the alleged wrongdoing, create an ambiguity as to whether the exclusion applies. Although evidence in the arbitration may ultimately establish the application of the exclusion, the liberal construction we must place on the Statement of Claim allegations and the Policy requires us to reject this exclusion as a basis to deny a duty to defend.

### 2. "Your Work"

The Policy also excludes coverage for "'Property damage' to: [t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." Hartford contends that this exclusion applies to the entire Aircraft, not just the IFE/CMS system or

"electrical system" in question.[8] "[I]f a contract of insurance is susceptible of more than one reasonable interpretation, we must resolve the uncertainty by adopting the construction that most favors the insured." Nat'l Union Fire Ins. Co. v. Hudson Energy Co., 811 S.W.2d 552, 555 (Tex. 1991). "In particular, exceptions or limitations on liability are strictly construed against the insurer and in favor of the insured." Id.

Hartford's reading of the exclusion reads out the words "that particular part." See Hartford Cas. Co. v. Cruse, 938 F.2d 601 (5th Cir. 1991) (construing a related provision to exclude damages to the defective foundation work performed by the insured but not damages to the entire house caused by that defective work). If work on any part of a property would leave an insured exposed for damages to the entire property, the exclusion should state: "Property damage to property that must be restored, repaired or replaced because your work was incorrectly performed on any part of it." Even if Hartford's construction were reasonable, so is the construction that would exclude coverage for the damage to the IFE/CMS itself (or, perhaps, the electrical system) but not the rest of the Aircraft and the ensuing loss of use damages. See Nat'l Union Fire Ins. Co., 811 S.W.2d at 555. Here, the Statement of Claim sought extensive damages beyond that of repairing the IFE/CMS or the electrical system.[9]

---

[8] The only case cited for that proposition is Sw. Tank & Treater Mfg. Co. v. Mid-Continent Cas. Co., 243 F. Supp. 2d 597, 603-04 (E.D. Tex. 2003). That case is not binding precedent on this court, and it has not been relied upon as authority by this court. The court there also focused on the insured's work on the entire tank that was damaged, rather than on a particular part.

[9] "[T]he damage to the Aircraft was so severe that it grounded the Aircraft as unairworthy and inoperable. . . . [D]uring the repair time, Claimants were unable to utilize this essential asset resulting in substantial loss of use damages. Furthermore, Defendants' damage . . . has permanently diminished the value of the Aircraft, resulting in millions of dollars in additional damage to Claimants." The Statement of Claim also seeks damages for such items as "[d]ebt service while the Aircraft was not operational." These damages are far removed from "damage to that particular part of [the] property."

### 3. Professional Services

Hartford's final argument is that the following clause excludes coverage: "This insurance does not apply to: . . . (j) . . . 'property damage' . . . due to the rendering of or failure to render any professional service. This includes but is not limited to: . . . (3) [s]upervisory, inspection, architectural or engineering activities."[10] The Texas Supreme Court, interpreting this same clause in the context of a medical lawsuit, has held that such an exclusion does not preclude a duty to defend where the petition alleges both negligent professional services and negligent services of some other nature. Utica Nat'l Ins. Co. v. Am. Indem. Co., 141 S.W.3d 198 (Tex. 2004).

The question is whether the plaintiff's injury is caused by a breach of the professional standard of care. Here, under the Statement of Claim, the design of the project – professional services – may have been negligent, resulting in the damage to the Aircraft. Alternatively, a worker may simply have made a mistake in the implementation of the design, which could be ordinary negligence. See Guar. Nat'l Ins. Co. v. N. River Ins. Co., 909 F.2d 133 (5th Cir. 1990) (failure to safeguard a patient's window did not fall within professional services exclusion); see also Allstate Ins. Co. v. Disability Servs. of the Sw., 400 F.3d 260, 264 (5th Cir. 2005) (distinguishing between services that are inherent in the provision of professional services and those that are incidental to such services). Hartford's brief on this point relies almost entirely upon a Southern District of Texas case broadly applying a professional services exclusion to

---

[10] Hartford also points to section C.2.f of the Policy regarding additional insureds which provides an exclusion "when an engineer, architect or surveyor becomes an [additional] insured . . . ." However, the Statement of Claim did not say that Gore was "an engineer, architect or surveyor." Rather, it alleged that Gore was a Texas general partnership providing a variety of services, including engineering. Reading the exclusion narrowly, as we must, it does not seem to apply to a design firm but rather to "an engineer" or, perhaps, "an engineering firm," neither of which Gore is alleged to be.

support an insurer's refusal to defend. Mid-Continent Cas. Co. v. Davis-Ruiz Corp., Nos. C-06-315, C-06-350, 2006 U.S. Dist. LEXIS 74986 (S.D. Tex. Oct. 3, 2006), rev'd, No. 07-40727, 2008 U.S. App. LEXIS 11730 (5th Cir. June 2, 2008). However, after Hartford's brief was filed, our court reversed the district court in that case in an unpublished decision.

Because the Statement of Claim does not unequivocally place the blame on the engineering services, the exclusion does not negate the duty to defend. As a result, we need not reach Gore's argument that such an exclusion would render the additional insured coverage meaningless. See St. Paul Ins. Co. v. Tex. Dept. of Transp., 999 S.W.2d 881, 886-87 (Tex. App. – Austin 1999, pet. denied) (holding that professional services exclusion in that policy, if construed as suggested by the insurer, would negate any coverage provided by the "additional insured" clause); see also Atofina Petrochemicals, Inc. v. Cont'l Cas. Co., 185 S.W.3d 440, 444 (Tex. 2005) ("[W]e adopt [the insured's] construction because [the insurer's] interpretation . . . would render coverage under the endorsement largely illusory").

## IV. Conclusion

Because Hartford owes a duty to defend under Texas law, the summary judgment was rendered in error. Resolution of the duty to indemnify at this stage would be premature. Similarly, because the district court's rendition of judgment in Hartford's favor on the Insurance Code Chapter 541 and 542 claims was based solely upon its erroneous conclusion that there was no duty to defend, it must be reversed as well. Accordingly, we REVERSE the district court's summary judgment and REMAND for further proceedings consistent with this opinion.