NO.
07-10-00359-CV          

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL A

 



APRIL
18, 2011

 



 

EVANSTON INSURANCE COMPANY, APPELLANT

 

v.

 

D&L MASONRY OF LUBBOCK, INC., APPELLEE 



 



 

 FROM THE COUNTY COURT AT LAW NO. 3
OF LUBBOCK COUNTY;

 

NO. 2009-564,144; HONORABLE JUDY A. PARKER, JUDGE



 



 

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

 

MEMORANDUM OPINION

            Evanston
Insurance Company (Evanston) appeals the trial court’s granting of a summary
judgment in favor of D&L Masonry, Inc. (D&L) and denial of the summary
judgment filed by Evanston.  We will
affirm.

 

 

 

 

Factual and Procedural Background

            Evanston
issued D&L a commercial general liability insurance policy, number
CL420401831.[1]  This policy had an applicable coverage period
from January 1, 2007, through January 1, 2008. 
Beginning January 1, 2008, and continuing through January 1, 2009,
D&L was covered by policy number CL420402187, also issued by Evanston.  During the applicable time period, D&L
was engaged in the masonry business and had been engaged as a subcontractor for
Lee Lewis Construction, Inc. (Lewis) to install masonry on renovations and
improvements to Dillman Elementary School and Watson
Junior High in Muleshoe, Texas.  Because
of scheduling difficulties and weather concerns, D&L did not do the masonry
work until after the window frames and windows had been installed.[2]   Because the windows and frames were already
in place, D&L had to attempt to seal the area between the frames and brick
with mortar.  In an effort to prevent
masonry mortar from damaging the window and frames, D&L used masking tape
around the window frames and soap and water to soap the windows.  After D&L had completed the masonry work,
the schools were examined and mortar stains were found on many of the window
frames.  Additionally, some of the frames
were scratched when D&L attempted to remove some of the excess mortar that
had fallen on the frames during the masonry work.  After the window frames were examined, it
became apparent that the school would not accept the completion of the project
with the window frames in a tarnished and scratched condition.  Further, the school would not agree to paint
the window frames because future maintenance costs would be incurred repainting
the frames periodically.  Eventually,
Lewis took control and had another subcontractor replace all of the damaged
frames.  D&L was charged and paid the
$58,113 cost of replacement.  D&L
submitted a claim for the cost of replacement to Evanston.  Evanston denied payment claiming that the
policy exclusions applied because the window frame damage was damage to
property upon which D&L performed its work. 

            D&L
filed suit pursuant to several different theories of recovery.  After some discovery, both D&L and
Evanston filed motions for summary judgment.[3]  The trial court granted D&L’s motion for
summary judgment on its breach of contract claim and denied Evanston’s motion
for summary judgment.  Subsequently,
D&L gave notice of non-suit without prejudice as to all other causes of
action pleaded in its live pleadings. 
The trial court signed an order granting the non-suit without prejudice
and Evanston gave timely notice of appeal.

            Evanston
presents one issue before this Court.  It
is Evanston’s contention that the trial court erred in granting summary
judgment in favor of D&L and denying Evanston’s summary judgment.  For the reasons hereafter stated, we disagree
and affirm the judgment of the trial court.

 

Standard of Review

            We
review the granting or denial of a motion for summary judgment de novo. 
See Valence Operating Co. v. Dorsett, 164
S.W.3d 656, 661 (Tex. 2005).  When
both parties file a motion for summary judgment, as in this case, and one is
granted and one is denied then we, as the reviewing court, must determine all
questions presented and render the judgment that should have been rendered by
the trial court.  See
HCBeck, Ltd. v. Rice, 284 S.W.3d 349,
352 (Tex. 2009).  

Analysis

            In
reviewing the trial court’s granting of D&L’s summary judgment and denying
Evanston’s summary judgment, we are being asked to construe the policy of
insurance under which D&L made its claim. 
There is no dispute about whether the policy was in full force at the
time of the loss upon which D&L made its claim.  The question presented to this Court is
whether the exclusions relied upon by Evanston to deny D&L’s claim apply.  If the
exclusions are not applicable, then the trial court was correct in granting
D&L’s summary judgment on its breach of contract theory.  If the exclusions do apply, then the judgment
the trial court should have rendered is to grant Evanston’s summary
judgment.  Id.

            When
interpreting an insurance contract, we use the same rules of interpretation and
construction that we apply to any contract. 
See Forbau
v. Aetna Life Ins., Co., 876 S.W.2d 132, 133 (Tex. 1994).  Our primary concern is to give effect to the
intent of the parties.  Id.  In this particular case, we are construing
the exclusions contained within the policy, therefore,
we must adopt the construction urged by the insured if that construction is not
unreasonable, even if the construction urged by the insurer appears to be more
reasonable.  See Utica Nat’l
Ins. Co. v. Am. Indem. Co., 141 S.W.3d 198, 202 (Tex.
2004).

            The
policy in question provides for coverage for “damages because of ‘bodily
injury’ or ‘property damage’ to which this insurance applies.”  However, paragraph 2 of the Commercial
General Liability Coverage Form provides for certain exclusions from
coverage.  Evanston contends that
paragraph 2. J. (5) and (6) exclude the property damage to the window frames in
question from coverage.  These exclusions
deny coverage for damages caused to:

(5) That particular part of real property on which you or any
contractors or subcontractors working directly or indirectly on your behalf are
performing operations, if the “property damage” arises out of those operations;

(6) That particular part of any property that must be
restored, repaired, or replaced because “your work” was incorrectly performed
on it.

There is an exception to
the exclusion of paragraph J(6) which provides,
“Paragraph (6) of this exclusion does not apply to ‘property damage’ included
in the ‘products-completed operations hazard.’”[4]  

            In section V of the policy, definitions are provided for
some of the terms that are used in the exclusion paragraphs.  Paragraph 21 of section V defines “Your Work”
as follows:

a.    Work or operations performed by you or on your behalf,
and

 

b.    Materials, parts or equipment furnished in connection
with such work or operations.

However, no one is
contesting the definitions; rather, it appears the conflict arises in the
application of the definitions to the facts. 
The main point of contention between the parties is whether the actions
taken by D&L in preparing to apply the mortar, and applying the mortar, to
the space between the last brick and the window frame constitutes working on
the window frames.  Evanston’s position
is that the activity of applying the tape to the window frames and soap to the
windows was work on the window frames for purposes of the exclusions.  Further, Evanston contends that allowing the
mortar to come into contact with the window frame also constituted work on the
frames.  Finally, Evanston contends that
any effort D&L took to eliminate any of the mortar from the window frame
was also work on the window frames. 
Under Evanston’s theories, all of this work on the window frames places
D&L’s claim squarely within the ambit of both exclusion J(5) and J(6).  D&L contends that the policy in question
is designed to protect the insured when its work damages someone else’s
property.  Under D&L’s theory, their
work did not include work on the frames. 
Rather, their work was with the brick and mortar which had to be placed
next to the frames in order to seal the frames. 
Accordingly, concludes D&L, the exclusions do not apply.

            The purpose of a commercial general liability policy is
to protect the insured from liability for damages when its own defective work
or product damages someone else’s property. 
See Mid-Contintent Cas. Co. v. JHP
Dev., Inc., 557 F.3d
207, 211-12 (5th Cir. 2009).  If such were not the case, then the insured
would have, in effect, contracted for indemnification for property damage
caused by its own defective workmanship. 
See Houston Bldg. Serv., Inc. v. Am. Gen. Fire & Cas. Co., 799 S.W.2d 308, 310 (Tex.App.—Houston [1st Dist.] 1990, writ denied).

To properly analyze the question
before the Court, we look to the language of each of the exclusions.  Turning first to the exclusion contained in
J(5), which excludes coverage for property damage to, “That particular part of
real property on which you or any contractors or subcontractors working directly
or indirectly on your behalf are performing operations, if the ‘property
damage’ arises out of those operations.” 
Exclusion J(6) excludes coverage for damage to,
“That particular part of any property that must be restored, repaired, or
replaced because ‘your work’ was incorrectly performed on it.”  What work was D&L contracted to perform
in connection with the renovations of the two schools in question?  The answer, and both
parties agree, is masonry work.  D&L
was not contracted to perform work on the window frames.  D&L’s contact with the window frames came
about only as a prophylactic measure to attempt to prevent damage.

In Gore Design Completions, LTD.
v. Hartford Fire Ins. Co., the 5th Circuit addressed this very
issue while trying to ascertain whether exclusion J(6)
applied to the claim of Gore.  538 F.3d 365, 371 (5th Cir. 2008).  Gore involved work by Gore on a
portion of the electrical system of a business jet.  The allegations were that, as a result of
Gore’s subcontractor’s negligent work to a component system, the entire electrical
system had to be replaced which resulted in damage to the entire aircraft.  When Gore tried to get Hartford to undertake
its defense, Hartford denied coverage contending that an exclusion worded the
same as J(6) would exclude coverage to the entire aircraft.  In finding that Hartford did in fact have
coverage, the court held that Hartford’s position reads out the words “that
particular part” in arriving at its interpretation of the exclusion.  Id. 
Because the damages sought went beyond the scope of “that particular
part” that Gore was responsible for, the court found that Hartford owed a duty
of defense.  Id.

Later, the 5th Circuit
construed an insurance exclusion based upon the definition of “your work.”  See Wilshire Ins. Co. v. RJT
Constr., LLC,, 581 F.3d 222, 226 (5th Cir. 2009).  In that case, the exclusion offered by the
insurance company was as follows:

This insurance does not apply to:

“Property damage” to “your work” arising out of it or any part of it
and included in the “products-completed operations hazard.”

In construing this exclusion, the
court held that the exclusion only precluded coverage for liability for
repairing or replacing the insured’s own defective work; it does not exclude
coverage for damage to other property resulting from the defective work.  Id. In so holding, the court cited the
Texarkana Court of Appeals’s case of Travelers
Ins. Co. v. Volentine, 578 S.W.2d 501, 503 (Tex.Civ.App.—Texarkana 1979, no writ).  Travelers dealt with a garage
liability policy where the insured had performed a valve job on a customer’s
car.  Id. at
502.  The allegation was that,
because of the defective valve job, the entire engine was destroyed.  Id. at 502-03.  Travelers invoked a “worked performed by you”
exclusion to deny coverage.  Id. at 503. 
Finding that the decisive question was whether Volentine’s
work product was the engine or merely the valve repair, the court held that the
valve repair was the work product.  Id. at 504.

            Finally,
in determining the issue of whether the insurance company owed the insured a
defense, the United States District Court for the Western District of Texas
addressed the “That Particular Part” exclusion under exclusions J(5) and
J(6).  See Basic
Energy Servs,, Inc. v. Liberty Mut.
Ins. Co., 655 F.Supp.2d 666, 676 (W.D. Tex. 2009).  In Basic, the insured was hired to
replace an oil pump on a well and, while doing so, a leak was detected.  Id. at 668.  The owner then contracted for Basic to
conduct pressure testing on the tubing before returning it to the well.  Id. 
While conducting the pressure testing and returning the tubing to the
well, the entire tubing string dropped into the well thereby allegedly causing
damage to the well bore and casing.  Id.  The insurance company was asked to pay the
cost of defense of a subsequently filed state court case.  Id. at 669.  The company refused contending that it did
not have coverage for a number of reasons, one of which was because of policy
exclusions identical to J(5) and J(6) in the present
case.  Id. at
676.  In analyzing the “That
Particular Part” exclusions of J(5) and J(6), the
court came to the conclusion that the “work done on the tubing and well bore is
not equivalent to working on the entire well.” 
Id. at 677.  Thus, the damage to the entire well was due
to negligence while working on a distinguishable component part and the
exclusions J(5) and J(6) did not apply.  Id. at 677-78.

            Evanston
urges this court to accept the reasoning of Houston Bldg. as
controlling.  See 799 S.W.2d at 311. 
However, we decline to do so as the facts in that case are
distinguishable from the facts presented to us. 
It is true that the case involved an application of the same exclusions
as are operative in this case, however, the job being performed by the insured
was work done directly on the subject of the contract, providing janitorial
services to the building in question.  Id. at 309. 
The damages at issue occurred when an employee of the insured, while
providing the aforementioned janitorial services, applied linseed oil to wooden
doors while cleaning the premises.  Id.  The doors and the frames suffered
discoloration damages, and a claim for repayment of damages was made to the
insured.  Id.  The insured paid the damages and then
submitted a claim to the insurance company who, asserting the exclusions, refused to pay. 
Id.  Clearly, the work
performed in Houston Bldg. was subject to the exclusions of J(5) and J(6).  But,
just as clearly, the facts of the present case are unquestionably different and
lead to a different result.  Therefore,
we do not find Houston Bldg. to be controlling.

            After
reviewing the above cases and their discussions of “Your Work” and “That
Particular Part” language of the various policies at issue, we are of the
opinion that D&L’s construction of the exclusions at work is not
unreasonable.  See Barnett v.
Aetna Life Ins. Co., 723 S.W.2d 663, 666 (Tex.
1987).  Therefore, the trial court did
not err in granting D&L’s motion for summary judgment.  Accordingly, Evanston’s single issue is
overruled.

Conclusion

            Having
overruled Evanston’s only issue, the judgment of the trial court is affirmed.

 

                                                                                                Mackey
K. Hancock

                                                                                                            Justice

Pirtle,
J., dissenting without written opinion.











[1] Evanston mentions only one policy in its brief,
CL420402187, however, neither party contests that there was a commercial
general liability policy issued by Evanston in favor of D&L in full force
at all times relevant to this dispute.

 





[2] The record reflects that, typically, the brick and
mortar work is done before the windows and frames are installed.





[3] D&L’s motion for summary judgment was filed as a
part of its response to Evanston’s motion for summary judgment.  The parties stipulated before the trial court
that the response would be considered a cross-motion for summary judgment.





[4] Because of our disposition of this matter, we do not
reach the exception to the exclusion J(6).