NO. 07-10-00359-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

APRIL 18, 2011

EVANSTON INSURANCE COMPANY, APPELLANT

v.

D&L MASONRY OF LUBBOCK, INC., APPELLEE

FROM THE COUNTY COURT AT LAW NO. 3 OF LUBBOCK COUNTY;

NO. 2009-564,144; HONORABLE JUDY A. PARKER, JUDGE

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Evanston Insurance Company (Evanston) appeals the trial court's granting of a summary judgment in favor of D&L Masonry, Inc. (D&L) and denial of the summary judgment filed by Evanston. We will affirm.

Factual and Procedural Background

Evanston issued D&L a commercial general liability insurance policy, number CL420401831.[1]  This policy had an applicable coverage period from January 1, 2007, through January 1, 2008.  Beginning January 1, 2008, and continuing through January 1, 2009, D&L was covered by policy number CL420402187, also issued by Evanston.  During the applicable time period, D&L was engaged in the masonry business and had been engaged as a subcontractor for Lee Lewis Construction, Inc. (Lewis) to install masonry on renovations and improvements to Dillman Elementary School and Watson Junior High in Muleshoe, Texas.  Because of scheduling difficulties and weather concerns, D&L did not do the masonry work until after the window frames and windows had been installed.[2]  Because the windows and frames were already in place, D&L had to attempt to seal the area between the frames and brick with mortar.  In an effort to prevent masonry mortar from damaging the window and frames, D&L used masking tape around the window frames and soap and water to soap the windows.  After D&L had completed the masonry work, the schools were examined and mortar stains were found on many of the window frames.  Additionally, some of the frames were scratched when D&L attempted to remove some of the excess mortar that had fallen on the frames during the masonry work.  After the window frames were examined, it became apparent that the school would not accept the completion of the project with the window

_____

[1] Evanston mentions only one policy in its brief, CL420402187, however, neither party contests that there was a commercial general liability policy issued by Evanston in favor of D&L in full force at all times relevant to this dispute.

[2] The record reflects that, typically, the brick and mortar work is done before the windows and frames are installed.

frames in a tarnished and scratched condition. Further, the school would not agree to paint the window frames because future maintenance costs would be incurred repainting the frames periodically. Eventually, Lewis took control and had another subcontractor replace all of the damaged frames. D&L was charged and paid the $58,113 cost of replacement. D&L submitted a claim for the cost of replacement to Evanston. Evanston denied payment claiming that the policy exclusions applied because the window frame damage was damage to property upon which D&L performed its work.

D&L filed suit pursuant to several different theories of recovery. After some discovery, both D&L and Evanston filed motions for summary judgment.[3] The trial court granted D&L's motion for summary judgment on its breach of contract claim and denied Evanston's motion for summary judgment. Subsequently, D&L gave notice of non-suit without prejudice as to all other causes of action pleaded in its live pleadings. The trial court signed an order granting the non-suit without prejudice and Evanston gave timely notice of appeal.

Evanston presents one issue before this Court. It is Evanston's contention that the trial court erred in granting summary judgment in favor of D&L and denying Evanston's summary judgment. For the reasons hereafter stated, we disagree and affirm the judgment of the trial court.

---

[3] D&L's motion for summary judgment was filed as a part of its response to Evanston's motion for summary judgment. The parties stipulated before the trial court that the response would be considered a cross-motion for summary judgment.

Standard of Review

We review the granting or denial of a motion for summary judgment *de novo*. See Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005). When both parties file a motion for summary judgment, as in this case, and one is granted and one is denied then we, as the reviewing court, must determine all questions presented and render the judgment that should have been rendered by the trial court. See HCBeck, Ltd. v. Rice, 284 S.W.3d 349, 352 (Tex. 2009).

Analysis

In reviewing the trial court's granting of D&L's summary judgment and denying Evanston's summary judgment, we are being asked to construe the policy of insurance under which D&L made its claim. There is no dispute about whether the policy was in full force at the time of the loss upon which D&L made its claim. The question presented to this Court is whether the exclusions relied upon by Evanston to deny D&L's claim apply. If the exclusions are not applicable, then the trial court was correct in granting D&L's summary judgment on its breach of contract theory. If the exclusions do apply, then the judgment the trial court should have rendered is to grant Evanston's summary judgment. Id.

When interpreting an insurance contract, we use the same rules of interpretation and construction that we apply to any contract. See Forbau v. Aetna Life Ins., Co., 876 S.W.2d 132, 133 (Tex. 1994). Our primary concern is to give effect to the intent of the parties. Id. In this particular case, we are construing the exclusions contained within the policy, therefore, we must adopt the construction urged by the insured if that

4

construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable. See Utica Nat'l Ins. Co. v. Am. Indem. Co., 141 S.W.3d 198, 202 (Tex. 2004).

The policy in question provides for coverage for "damages because of 'bodily injury' or 'property damage' to which this insurance applies." However, paragraph 2 of the Commercial General Liability Coverage Form provides for certain exclusions from coverage. Evanston contends that paragraph 2. J. (5) and (6) exclude the property damage to the window frames in question from coverage. These exclusions deny coverage for damages caused to:

> (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations;

> (6) That particular part of any property that must be restored, repaired, or replaced because "your work" was incorrectly performed on it.

There is an exception to the exclusion of paragraph J(6) which provides, "Paragraph (6) of this exclusion does not apply to 'property damage' included in the 'products-completed operations hazard.'"[4]

In section V of the policy, definitions are provided for some of the terms that are used in the exclusion paragraphs. Paragraph 21 of section V defines "Your Work" as follows:

> a. Work or operations performed by you or on your behalf, and

---

[4] Because of our disposition of this matter, we do not reach the exception to the exclusion J(6).

b. Materials, parts or equipment furnished in connection with such work or operations.

However, no one is contesting the definitions; rather, it appears the conflict arises in the application of the definitions to the facts. The main point of contention between the parties is whether the actions taken by D&L in preparing to apply the mortar, and applying the mortar, to the space between the last brick and the window frame constitutes working on the window frames. Evanston's position is that the activity of applying the tape to the window frames and soap to the windows was work on the window frames for purposes of the exclusions. Further, Evanston contends that allowing the mortar to come into contact with the window frame also constituted work on the frames. Finally, Evanston contends that any effort D&L took to eliminate any of the mortar from the window frame was also work on the window frames. Under Evanston's theories, all of this work on the window frames places D&L's claim squarely within the ambit of both exclusion J(5) and J(6). D&L contends that the policy in question is designed to protect the insured when its work damages someone else's property. Under D&L's theory, their work did not include work on the frames. Rather, their work was with the brick and mortar which had to be placed next to the frames in order to seal the frames. Accordingly, concludes D&L, the exclusions do not apply.

The purpose of a commercial general liability policy is to protect the insured from liability for damages when its own defective work or product damages someone else's property. See Mid-Contintent Cas. Co. v. JHP Dev., Inc., 557 F.3d 207, 211-12 (5th Cir. 2009). If such were not the case, then the insured would have, in effect, contracted for indemnification for property damage caused by its own defective workmanship. See

6

Houston Bldg. Serv., Inc. v. Am. Gen. Fire & Cas. Co., 799 S.W.2d 308, 310 (Tex.App.—Houston [1st Dist.] 1990, writ denied).

To properly analyze the question before the Court, we look to the language of each of the exclusions. Turning first to the exclusion contained in J(5), which excludes coverage for property damage to, "That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations." Exclusion J(6) excludes coverage for damage to, "That particular part of any property that must be restored, repaired, or replaced because 'your work' was incorrectly performed on it." What work was D&L contracted to perform in connection with the renovations of the two schools in question? The answer, and both parties agree, is masonry work. D&L was not contracted to perform work on the window frames. D&L's contact with the window frames came about only as a prophylactic measure to attempt to prevent damage.

In Gore Design Completions, LTD. v. Hartford Fire Ins. Co., the 5th Circuit addressed this very issue while trying to ascertain whether exclusion J(6) applied to the claim of Gore. 538 F.3d 365, 371 (5th Cir. 2008). Gore involved work by Gore on a portion of the electrical system of a business jet. The allegations were that, as a result of Gore's subcontractor's negligent work to a component system, the entire electrical system had to be replaced which resulted in damage to the entire aircraft. When Gore tried to get Hartford to undertake its defense, Hartford denied coverage contending that an exclusion worded the same as J(6) would exclude coverage to the entire aircraft. In

7

finding that Hartford did in fact have coverage, the court held that Hartford's position reads out the words "that particular part" in arriving at its interpretation of the exclusion. Id. Because the damages sought went beyond the scope of "that particular part" that Gore was responsible for, the court found that Hartford owed a duty of defense. Id.

Later, the 5th Circuit construed an insurance exclusion based upon the definition of "your work." See Wilshire Ins. Co. v. RJT Constr., LLC,, 581 F.3d 222, 226 (5th Cir. 2009). In that case, the exclusion offered by the insurance company was as follows:

This insurance does not apply to:

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

In construing this exclusion, the court held that the exclusion only precluded coverage for liability for repairing or replacing the insured's own defective work; it does not exclude coverage for damage to other property resulting from the defective work. Id. In so holding, the court cited the Texarkana Court of Appeals's case of Travelers Ins. Co. v. Volentine, 578 S.W.2d 501, 503 (Tex.Civ.App.—Texarkana 1979, no writ). Travelers dealt with a garage liability policy where the insured had performed a valve job on a customer's car. Id. at 502. The allegation was that, because of the defective valve job, the entire engine was destroyed. Id. at 502-03. Travelers invoked a "worked performed by you" exclusion to deny coverage. Id. at 503. Finding that the decisive question was whether Volentine's work product was the engine or merely the valve repair, the court held that the valve repair was the work product. Id. at 504.

8

Finally, in determining the issue of whether the insurance company owed the insured a defense, the United States District Court for the Western District of Texas addressed the "That Particular Part" exclusion under exclusions J(5) and J(6). See Basic Energy Servs,, Inc. v. Liberty Mut. Ins. Co., 655 F.Supp.2d 666, 676 (W.D. Tex. 2009). In Basic, the insured was hired to replace an oil pump on a well and, while doing so, a leak was detected. Id. at 668. The owner then contracted for Basic to conduct pressure testing on the tubing before returning it to the well. Id. While conducting the pressure testing and returning the tubing to the well, the entire tubing string dropped into the well thereby allegedly causing damage to the well bore and casing. Id. The insurance company was asked to pay the cost of defense of a subsequently filed state court case. Id. at 669. The company refused contending that it did not have coverage for a number of reasons, one of which was because of policy exclusions identical to J(5) and J(6) in the present case. Id. at 676. In analyzing the "That Particular Part" exclusions of J(5) and J(6), the court came to the conclusion that the "work done on the tubing and well bore is not equivalent to working on the entire well." Id. at 677. Thus, the damage to the entire well was due to negligence while working on a distinguishable component part and the exclusions J(5) and J(6) did not apply. Id. at 677-78.

Evanston urges this court to accept the reasoning of Houston Bldg. as controlling. See 799 S.W.2d at 311. However, we decline to do so as the facts in that case are distinguishable from the facts presented to us. It is true that the case involved an application of the same exclusions as are operative in this case, however, the job being performed by the insured was work done directly on the subject of the contract, providing janitorial services to the building in question. Id. at 309. The damages at

issue occurred when an employee of the insured, while providing the aforementioned janitorial services, applied linseed oil to wooden doors while cleaning the premises. Id. The doors and the frames suffered discoloration damages, and a claim for repayment of damages was made to the insured. Id. The insured paid the damages and then submitted a claim to the insurance company who, asserting the exclusions, refused to pay. Id. Clearly, the work performed in Houston Bldg. was subject to the exclusions of J(5) and J(6). But, just as clearly, the facts of the present case are unquestionably different and lead to a different result. Therefore, we do not find Houston Bldg. to be controlling.

After reviewing the above cases and their discussions of "Your Work" and "That Particular Part" language of the various policies at issue, we are of the opinion that D&L's construction of the exclusions at work is not unreasonable. See Barnett v. Aetna Life Ins. Co., 723 S.W.2d 663, 666 (Tex. 1987). Therefore, the trial court did not err in granting D&L's motion for summary judgment. Accordingly, Evanston's single issue is overruled.

Conclusion

Having overruled Evanston's only issue, the judgment of the trial court is affirmed.

Mackey K. Hancock
Justice

Pirtle, J., dissenting without written opinion.