# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

February 26, 2020

Lyle W. Cayce
Clerk

No. 17-10615

_____

ALLIED WORLD SPECIALTY INSURANCE COMPANY, formerly known as Darwin National Assurance Company,

      Plaintiff - Appellant

v.

MCCATHERN, P.L.L.C., formerly known as McCathern Mooty, L.L.P.; LEVI MCCATHERN,

      Defendants - Appellees

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:16-CV-2489

_____

Before ELROD, COSTA, and HO, Circuit Judges.

PER CURIAM:*

McCathern P.L.L.C. and its named partner, Levi McCathern (together, "McCathern") are facing a legal malpractice lawsuit brought by one of the firm's clients, West Star Transportation, Inc. ("West Star"). In this declaratory judgment action, McCathern's insurer, Allied World Specialty Insurance Co. ("Allied World"), contends that it does not have to defend the malpractice case.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-10615

McCathern moved to dismiss. The district court granted the motion in part, concluding that Allied World has a duty to defend. After oral argument, we held this case in abeyance for almost eighteen months because Levi McCathern filed for bankruptcy. The bankruptcy court recently modified the automatic stay to allow this appeal to go forward. With this case finally out of hibernation, we affirm.

I.

### *McCathern Represented West Star in the* Robison *Action*

In January 2009, McCathern was retained to represent West Star in a personal injury action filed by Charles and Cheri Robison in Texas state court. West Star was covered by a Lexington Insurance Company policy with a $500,000 limit.

Early in the lawsuit, the Robisons' counsel sent McCathern a letter purporting to be a *Stowers*[1] demand. It offered to settle the Robisons' claims for the remaining available limit of the Lexington Policy. By its terms, the *Stowers* letter would expire at 5:00 p.m. on May 8, 2009. Lexington instructed McCathern to accept the *Stowers* demand on May 6, 2009. Levi McCathern contends he did so by telephone before the deadline, but he did not accept the offer in writing until 42 minutes after the deadline. The Robisons' counsel rejected the written acceptance as untimely.

The parties disputed whether McCathern timely accepted the settlement offer. Relying on the supposed oral acceptance of the *Stowers* demand, McCathern filed a motion to enforce the settlement and asserted the affirmative defense of settlement on behalf of West Star. But the court denied

---

[1] "Sending a demand letter (commonly called the 'Stowers' letter) warns the insurance carrier of a potential claim for violation of its duty to its own insured . . . . The letter points out the potential added liability and damages that can be assessed against the carrier . . . for failure to accept a demand for fair settlement within policy limits." 2 TEXAS PRACTICE GUIDE PERSONAL INJURY 2d § 6:120.

2

No. 17-10615

West Star's motion to enforce the alleged oral agreement and later granted summary judgment rejecting the affirmative defense of settlement.

The case proceeded to trial where the jury found against West Star and awarded over $5.5 million to the Robisons. The judgment was affirmed on appeal. *W. Star Transp., Inc. v. Robison*, 457 S.W.3d 178, 182 (Tex. App.—Amarillo 2015, pet. denied).

*Malpractice Litigation Against McCathern*

In 2016, two lawsuits were filed against McCathern alleging that it was liable for the multimillion dollar judgment against West Star. First, Lexington filed a federal declaratory judgment action against the McCathern, West Star, and the Robisons. Lexington alleged that West Star's liability in excess of the Lexington Policy's limits was the result of McCathern's failure to timely accept the *Stowers* demand.

West Star filed suit against McCathern and Lexington in Texas state court. West Star alleged, among other things, that McCathern engaged in the following malpractice:

- "Failing to properly monitor the file on behalf of [West Star]";

- "Failing to work the file on behalf of [West Star]";

- "Failing to timely and properly communicate with [West Star], including but not limited to, failing to keep [West Star] properly apprised of the *Stowers* deadline and resolution of the case";

- "Failing to properly research all issues of fact[] and law";

- "Failing to timely respond to the *Stowers* demand brought by the Robisons"; and

- "In all things failing to act as a reasonably prudent attorney under the same or similar circumstances."

West Star maintained that "[a]ll of these acts of negligence, among others, taken together and separately, proximately caused Plaintiff West Star to be

3

No. 17-10615

exposed to an excess judgment in the current amount of $6,583,860.94, and increasing daily at a rate of $867.55."

The federal court in the Lexington case dismissed its suit in favor of the one West Star brought in state court. *See Lexington Ins. Co. v. W. Star Transp., Inc.*, 2017 WL 3867770, at *2–3 (N.D. Tex. May 2, 2017). The West Star action remains pending.

*McCathern's Insurance Policy*

McCathern was insured under a professional liability policy issued by Allied World for the period from September 18, 2009, to September 18, 2010 (the "Policy"). Under the Policy, "the Insurer shall have the right and duty to defend any Claim seeking Damages that are covered by this Policy and made against an Insured even if any of the allegations of the Claim are groundless, false or fraudulent." Further, the Policy provides coverage for "all amounts in excess of the Retention . . . that an Insured becomes legally obligated to pay as Damages and Claim Expenses because of a Claim arising out of a Wrongful Act . . . that is first made during the Policy Period or any Extended Reporting Period." The Policy defines Wrongful Act to mean "an actual or alleged act, error or omission by an Insured, solely in the performance of or failure to perform Legal Services."

Although the Policy generally covers malpractice claims asserted against the insured during the policy period, it does not apply to certain claims based on wrongful acts that occurred before the policy's inception date when the insured should have known it was facing potential liability before purchasing the insurance. This Prior Knowledge Condition provides:

> [P]rior to the inception date of the first policy issued
> by the Insurer if continuously renewed, no Insured
> had any basis (1) to believe that any Insured had
> breached a professional duty; or (2) to foresee that any
> such Wrongful Act or Related Act or Omission might

4

No. 17-10615

reasonably be expected to be the basis of a Claim against any Insured[.]

When it was sued in the malpractice litigation, McCathern asked for Allied World to defend it.  Allied World undertook the defense subject to a reservation of its rights.

*District Court Proceedings*

Allied World then filed this lawsuit seeking declarations that it has no obligation to defend or indemnify McCathern.  The dispute turns on whether the Prior Knowledge Condition applies. McCathern moved to dismiss, emphasizing several allegations in the malpractice litigation that invoked Allied World's duty to defend.  The district court granted McCathern's motion on the duty to defend.  As for Allied World's duty to indemnify, the district court held that a ruling would be premature.  *Id.*  The district court entered partial judgment under Federal Rule of Civil Procedure 54(b) on its duty to defend ruling.

II.

Under Texas law, an insurer's duty to defend is determined by the "eight-corners rule." *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008).  The rule refers to the eight corners of the only two documents that are relevant to the analysis: the insurance policy and the pleadings of the underlying suit.  *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006).  The court does not consider the merits of the claim or the truth or falsity of the allegations.  *Id.*  The duty to defend applies as long as there is a possibility that any claim might be covered.  *Zurich*, 268 S.W.3d at 491 (citing 14 COUCH ON INSURANCE § 200:1 (3d. ed. 2007) ("Typically, even if only one claim in a complaint containing multiple claims could be covered, the insured must defend the entire action and the insurer must demonstrate that all the claims of the suit fall outside the policy's

coverage to avoid defending the insured.")).  An insurer owes the duty if the petition in the underlying suit contains factual allegations which fall within the scope of coverage provided for in the insurance policy.  *Id.* at 490 (citing *GuideOne*, 197 S.W.3d at 310).  All doubts concerning the duty must be resolved in favor of the insured.  *See id.* at 491; *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965).

To state a plausible claim for declaratory relief that no duty to defend exists, Allied World was thus required to show either that (1) none of the allegations in the underlying actions are potentially covered under the Policy; or (2) the underlying pleadings only alleged facts excluded by the Policy.  *See City of College Station v. Star Ins. Co.*, 735 F.3d 332, 336 (5th Cir. 2013); *Fidelity & Guar. Ins. Underwriters, Inc. v. McManus*, 633 S.W.2d 787, 788 (Tex. 1982) ("If the petition only alleges facts excluded by the policy, the insurer is not required to defend.").  Allied World has failed to do either.

## III.

Allied World has a duty to defend against claims arising from wrongful acts that occurred "during the Policy Period" and against claims arising from wrongful acts that occurred before the Policy Period if certain conditions are satisfied.  Because we conclude that some of the alleged wrongful acts occurred "during the Policy Period," we agree with the district court that Allied World has a duty to defend McCathern against the underlying malpractice litigation.[2]

Allied World argues that West Star's suit centers on McCathern's failure to accept the *Stowers* demand, which happened four months before the Policy's inception.  West Star, however, alleges multiple acts of "negligence."  Those other allegations include (1) failing to properly monitor the file, (2) failing to

---

[2] Because we conclude there are allegations based on acts occurring during the policy period, we do not need to address the parties' arguments about whether McCathern should have known of acts that predated the inception date when it purchased the policy.

6

work the file, (3) failing to protect West Star from an excess judgment, (4) failing to properly research factual and legal issues, and (5) failing to act as a reasonably prudent attorney under the same or similar circumstances. According to West Star, "[a]ll of these acts of negligence, among others, taken together and *separately*, proximately caused Plaintiff West Star to be exposed to an excess judgment . . . ." In applying the Prior Knowledge Condition, we thus are not limited to considering when McCathern failed to accept the *Stowers* demand.

The question thus becomes: When did the other alleged acts occur? West Star's petition does not specify. But as we read the allegations, some or more of the negligent acts may have occurred, and in fact likely did occur, after the Policy's inception date. For example, McCathern's alleged failure to "monitor" and "work" the file, or to properly research certain issues, would seemingly apply throughout the personal injury suit. Even if the timing of these acts is indeterminable, the pleadings should be liberally construed in favor of the duty to defend. *Zurich*, 268 S.W.3d at 491; *see also Harken Expl. Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 476–77 (5th Cir. 2001) (interpreting ambiguous allegations broadly to find that they occurred during relevant policy period).

Allied World responds that the non-*Stowers* malpractice allegations are legal conclusions, not factual allegations. It is the latter, Allied World points out, that determine whether there is a duty to defend. *See Farmers Tex. Cty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997) ("A court must focus on the factual allegations rather than the legal theories asserted in reviewing the underlying petition."); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997); *see also Adamo v. State Farm Lloyds Co.*, 853 S.W.2d 673, 676 (Tex. App.—Houston [14th Dist.] 1993, writ denied). But this is not a case like *Griffin*, which was an attempt to manufacture a duty to defend by pinning a legal label to facts that did not fit

the cause of action. The underlying incident in that case was a drive-by shooting. *Griffin*, 955 S.W.2d at 82. The owner of the car from which the shots were fired argued that his auto insurer had a duty to defend him from a suit brought by the shooting victim. *Id.* The auto policy covered negligent acts but not intentional ones. *Id.* at 82–83. The victim in the underlying lawsuit alleged facts showing an intentional shooting but asserted negligence claims. *Id.* at 83. The Supreme Court of Texas held that there was no duty to defend because the facts alleged intentional conduct despite the negligence label affixed to those allegations. *Id.*

Here there is no argument that the legal conclusion in West Star's lawsuit—malpractice—does not fit the factual allegations. The allegations that McCathern did not monitor the file, conduct legal research, or communicate with the client are factual assertions—as opposed to causes of action—even if they are vague. Allied World's challenge to the factual allegations thus seems to be that they are not specific enough or may not prove true. But at the duty-to-defend stage it is not for us to say whether West Star will be able to prove that McCathern was negligent in failing to monitor the personal injury suit or in failing to research legal issues. *See, e.g., Gehan Homes, Ltd. v. Emp'rs Mut. Cas. Co.*, 146 S.W.3d 833, 842–43 (Tex. App.—Dallas 2004, pet. denied) ("There is a vast difference between a court analyzing pleadings . . . and a court conducting an evaluation of the merits of the underlying claim. . . . If we were to hold that there is no duty to defend, we would be doing precisely what Texas courts have long held we cannot do—evaluate the merits of the claim and ignore the facts alleged."). As for the specificity, Texas courts recognize that even "vague" allegations may give rise to a duty to defend. *See, e.g., Lexington Ins. Co. v. Nat'l Oilwell NOV, Inc.*, 355 S.W.3d 205, 213 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (Bland, J.); *Burlington Ins. Co. v. Tex. Krishnas, Inc.*, 143 S.W.3d 226, 231 (Tex. App.—

Eastland 2004, no pet.).  Indeed, it is because the allegations in the underlying lawsuit will often be too vague or general (*Twombley* and *Iqbal* do not apply in state court) that Texas law has long applied a tiebreaker in a "case of doubt as to whether or not the allegations of a complaint . . . compel the insurer to defend the action": the uncertainty is "resolved in [the] insured's favor."  *Heyden*, 387 S.W.2d at 26 (quotation omitted); *see also Zurich*, 268 S.W.3d at 491.  We have recognized the powerful role of this rule, describing it as "very favorable to insureds."  *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 368 (5th Cir. 2008).

Based on these principles, the district court correctly concluded that at least some of the malpractice allegations against McCathern "potentially implicate[d]" the Allied World policy.  That triggers the duty to defend. As it only takes one such claim to trigger the duty to defend, *Zurich*, 268 S.W.3d at 491, the parsing that can be required in a duty to indemnify case—determining which if any covered allegations gave rise to the liability, *Data Specialties, Inc. v. Transcontinental Ins. Co.*, 125 F.3d 909, 911 (5th Cir. 1997)—is not necessary.  The question at this time is only the duty to defend.

The judgment is AFFIRMED.